Filed 2/25/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MARK CORREIA et al., | D073798 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2017-00019945-CU-OE-NC) |
| NB BAKER ELECTRIC, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

Finch, Thornton & Baird, Chad T. Wishchuk, Kathleen A. Donahue and Marlene C. Nowlin for Defendant and Appellant.

Baker Law Group, Michelle Baker; Law Office of Alan S. Yockelson and Alan S. Yockelson for Plaintiffs and Respondents.

Plaintiffs Mark Correia and Richard Stow sued their former employer, NB Baker Electric, Inc. (Baker), alleging wage and hour violations and seeking civil penalties under

the Private Attorney General Act of 2004 (PAGA). (Lab. Code, § 2699 et seq.)[1] Baker responded by petitioning for arbitration under the parties' arbitration agreement. The agreement provided that arbitration shall be the exclusive forum for any dispute and prohibited employees from bringing a "representative action."

The trial court granted the arbitration petition on all causes of action except for the PAGA claim. On the PAGA claim, the court followed the California Supreme Court decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held unenforceable agreements to waive the right to bring PAGA representative actions in any forum, and the California Court of Appeal decision in *Tanguilig v. Bloomingdale's, Inc.* (2016) 5 Cal.App.5th 665 (*Tanguilig*), which held a PAGA claim cannot be compelled to arbitration without the state's consent. The trial court stayed the PAGA claim pending the conclusion of the arbitration.

Baker contends the court erred because: (1) plaintiffs' response to its arbitration petition was untimely; (2) *Iskanian* is no longer binding as it is inconsistent with a recent United States Supreme Court decision, *Epic Systems Corp. v. Lewis* (2018) __ U.S. __ [138 S.Ct. 1612] (*Epic*); and (3) the parties' arbitration agreement should be interpreted to mean that if the representative-action waiver is unenforceable, the PAGA claim for statutory penalties remains subject to arbitration.

We determine the court acted within its discretion in considering plaintiffs' response to the arbitration petition despite that plaintiffs filed the response after the

---

[1] Undesignated statutory references are to the Labor Code.

2

statutory deadline. We additionally determine we remain bound by *Iskanian*. Although the *Epic* court reaffirmed the broad preemptive scope of the Federal Arbitration Act (FAA), *Epic* did not address the specific issues before the *Iskanian* court involving a claim for civil penalties brought *on behalf of the government* and the enforceability of an agreement barring a PAGA representative action in any forum. We thus conclude the trial court properly ruled the waiver of representative claims in any forum is unenforceable.

We also reject Baker's contention that the court erred in failing to order plaintiffs' PAGA claim to arbitration. Although *Iskanian* did not decide the issue of whether courts have the authority to order a PAGA representative action into arbitration, several California Courts of Appeal have held a PAGA arbitration requirement in a predispute arbitration agreement is unenforceable based on *Iskanian*'s view that the state is the real party in interest in a PAGA claim. These courts reasoned the state must have consented to the agreement to effectively waive the right to bring the PAGA claim into court. We agree with this analysis as applied to the circumstances before us.

We are aware the federal courts have reached a different conclusion regarding the arbitrability of a PAGA representative claim, but find these decisions unpersuasive because the courts did not fully consider the implications of the qui tam nature of a PAGA claim on the enforceability of an employer-employee arbitration agreement. Moreover, although we provided Baker the specific opportunity to do so, it failed to identify a sound basis for this court to apply the federal decisions on this issue.

FACTUAL AND PROCEDURAL BACKGROUND

In 2014 and 2015, plaintiffs began working for Baker. At the outset, each employee signed an identical arbitration agreement (Arbitration Agreement). This agreement provided in relevant part:

"Section 4

"The Company and Employee agree that Employee's employment . . . involves interstate commerce and thus the [FAA] applies.

"Section 5

"Employee and the Company agree that in the event any dispute arises between Employee and the Company relating to Employee's employment with the Company, including without limitation, any claim(s) based on common law, any express or implied contract, any federal or state statute, any statute or provision relating to employment discrimination and/or employment rights, any wage and hour claims, the federal or any state constitution and/or any public policy, will be determined by binding arbitration and not by a lawsuit or resort to court process. [¶] . . . [¶]

"The arbitration provided for in this Agreement shall be the exclusive forum for any dispute between Employee and the Company related to the claims set forth above. . . . [¶] . . . [¶]

"Section 6

"No claims covered by this Agreement shall be permitted by the arbitrator or a court to proceed or be maintained as a class action or representative action by an Employee on behalf of other Employees.

"Section 7

"**NOTICE: BY SIGNING THIS AGREEMENT, YOU ARE GIVING UP YOUR RIGHT TO MAINTAIN ANY CLASS ACTION OR REPRESENTATIVE ACTION IN ARBITRATION OR ANY COURT CONCERNING ANY DISPUTE SPECIFIED IN SECTION 5 ABOVE.**

4

"Section 8

"**NOTICE:  BY SIGNING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ANY ISSUE RELATING TO YOUR EMPLOYMENT OR OTHER DISPUTE SPECIFIED IN SECTION 5 ABOVE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL.**"

The Arbitration Agreement also contained a severance clause stating that if any provision or part of a provision is found to be invalid, the finding shall not "invalidat[e]" the remaining portions of the provision or any other part of the agreement.

In December 2016, the employment ended for both plaintiffs.

Six months later, in June 2017, plaintiffs filed a complaint against Baker.  As amended, the complaint asserted breach of contract, statutory unfair competition, and wage and hour violations.[2]  Plaintiffs sought damages for these violations and requested penalties under PAGA.  On their PAGA claim, plaintiffs alleged they were bringing the action "on their own behalf, and in their representative capacity on behalf of other current or former aggrieved employees, for penalties pursuant to [section] 2699 for [Baker's] violations of the enumerated . . . Labor Code sections . . . ."  (Italics omitted.)  They sought 25 percent of all penalties for the employees and the remaining 75 percent for the

_____

[2]     The alleged wage and hour violations included: failure to pay wages; failure to provide accurate wage statements; waiting time penalties; failure to reimburse vehicle expense; failure to pay wages when due; failure to pay minimum wages due to misclassification; and failure to pay overtime wages due to misclassification.  (See §§ 201, 203, 216, 226, 2802, 1194, 1194.2, 510, 1199.)

5

state. They alleged they previously notified the California Labor Workforce Development Agency (Agency) of their intention to bring the PAGA claims.

On September 7, 2017, Baker petitioned for an order compelling plaintiffs to submit their causes of action to separate, individual arbitrations under the Arbitration Agreement. Baker scheduled the hearing for January 12, 2018.

On December 29, 2017, plaintiffs filed an opposition to Baker's petition. They argued: (1) the Arbitration Agreement was procedurally and substantively unconscionable; (2) the agreement was void because it contains an unenforceable waiver of PAGA representative actions; (3) PAGA representative actions cannot be compelled to arbitration; and (4) judicial economy would not be served by severing the remaining claims from the PAGA claim that must be litigated in court.

In reply, Baker argued plaintiffs' response must be stricken because it was untimely filed, and alternatively the Arbitration Agreement should be enforced because it was not procedurally or substantively unconscionable. On the PAGA claim, Baker did not seek to enforce the representative-action waiver, but urged the court to order this claim into arbitration, asserting that *Iskanian* and a more recent Ninth Circuit decision (*Sakkab v. Luxottica Retail North America, Inc*. (9th Cir. 2015) 803 F.3d 425 (*Sakkab*)) both contemplated that PAGA claims can be arbitrated, even if they could not be completely barred. Baker argued that at the very least the PAGA "individual" claims should be ordered to arbitration. Baker also asserted that the PAGA claims were asserted in bad faith merely "as a means to gain additional damages unrelated to their own

6

individual claims" and that by failing to intervene, the state "waiv[ed] any interest" in plaintiffs' claims.

At the hearing on the motion, Baker's counsel reiterated that she agreed plaintiffs' PAGA representative-action waiver was not enforceable under *Iskanian*, but argued *Iskanian* did not hold that PAGA claims could not be compelled to arbitration. The court responded that it would adhere to its tentative ruling that all claims would be ordered to arbitration except for the PAGA claim. The court also remarked: "It will be nice when we get some firm direction on this . . . because the [state and federal courts] seem[] to be all over the place on it. [¶] Right now, I think that the [law is] . . . I can't order a PAGA claim to arbitration. [¶] . . . [¶] . . . To me, you can make a fair argument that it will be much more efficient for everybody to do them all in one place . . . . [¶] [But] I'm going to stay the PAGA case. I'm going to send the rest of it to arbitration. . . ."

In its written order, the court explained its rejection of plaintiffs' substantive unconscionability arguments, and ordered all claims to arbitration except for the PAGA claim. On the PAGA claim, the order stated: " 'A PAGA claim (whether individual or representative) cannot be ordered to arbitration without the state's consent,' " citing *Tanguilig, supra,* 5 Cal.App.5th 665.

## DISCUSSION

Baker contends the court erred in refusing to enforce the Arbitration Agreement provision barring plaintiffs from bringing representative claims in any forum. Baker alternatively contends the court erred in refusing to order the PAGA representative and/or individual claims to arbitration.

7

## I. *Timeliness of Plaintiffs' Opposition Papers*

Before reaching plaintiffs' substantive arguments, we consider Baker's contention the court erred in considering plaintiffs' response to the arbitration petition because plaintiffs did not file the opposition by the statutory deadline date.

Code of Civil Procedure section 1290 authorizes a party to seek to compel arbitration by filing a petition in court, and states the petition allegations "are deemed to be admitted . . . unless a response is duly served and filed." Code of Civil Procedure section 1290.6 provides: "A response shall be served and filed within 10 days after service of the petition [with an exception not applicable here] . . . . The time provided in this section for serving and filing a response may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court."

Baker filed its petition to compel arbitration on September 7, 2017. The motion identified the hearing date as January 12, 2018. Plaintiffs filed their opposition on December 29, 2017. The opposition was untimely under Code of Civil Procedure section 1290.6's deadline. Plaintiffs apparently calculated their time from the general motions deadline, which is nine court days before the hearing (Code Civ. Proc., § 1005, subd. (b)), rather than 10 days after the arbitration moving papers are served (Code Civ. Proc., § 1290.6). (See *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 847 (*Ruiz*).)

Baker contends the court had no jurisdiction to consider this untimely response. We disagree. First, it is not clear that the arbitration petition statute—rather than the general motions statute—governs the timing requirements when a complaint has been

filed in court. (See *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349; see also Younger on California Motions (2d ed. 2017) § 9:11 ["when a party has already commenced a lawsuit in a dispute subject to an arbitration agreement, . . . a motion is . . . the proper procedure" and "[f]or practical purposes a petition is a motion"].)

Even if the petition timeline applied here, Code of Civil Procedure section 1290.6 specifically allows a court to extend the time for filing an opposition for good cause, and reviewing courts have long held trial courts are authorized to consider late-filed opposition papers for good cause if there is no undue prejudice to the moving party. (*Juarez v. Wash Depot Holdings, Inc.* (2018) 24 Cal.App.5th 1197, 1201-1202; *Ruiz, supra,* 232 Cal.App.4th at p. 847.) The circumstances surrounding an untimely opposition to a petition or motion to compel arbitration should be viewed under "the strong policy of the law favoring the disposition of cases on the merits . . . ." (*Juarez*, at p. 1202.)

As the appellant, Baker has the burden to show the court had no good cause to consider plaintiffs' opposition papers and/or that it suffered undue prejudice. Baker has not met this burden. Baker had ample opportunity to oppose plaintiffs' arguments in its reply brief and at the hearing, and does not identify any factual ground for finding plaintiffs acted in bad faith. Baker's citation to several older authorities does not convince us the court abused its discretion in considering plaintiffs' opposition papers, as those cases are distinguishable. (See *A.D. Hoppe Co. v. Fred Katz Construction Co.* (1967) 249 Cal.App.2d 154, 158 [no response to arbitration petition ever filed]; see also *Evans Products Co. v. Millmen's Union No. 550* (1984) 159 Cal.App.3d 815, 819.)

9

II. *Iskanian Remains Good Law on Nonenforceability of Blanket PAGA Waivers*

In the Arbitration Agreement, plaintiffs agreed to waive their rights to "maintain any . . . representative action in arbitration or any court concerning any dispute specified in Section 5 . . . ."  (Capitalization and boldface omitted.)  Section 5 identifies "any dispute aris[ing] between Employee and [Baker] relating to Employee's employment with [Baker]. . . ."

In the court below, the parties agreed a "representative action" included a PAGA claim and that the Arbitration Agreement purported to ban these claims in any forum— arbitration or court.  Baker conceded that this complete ban was unenforceable under *Iskanian.*  On appeal, it has changed its position.  Baker now asserts that the ban is enforceable because *Iskanian* is no longer good law after the United States Supreme Court's recent decision in *Epic.*  Baker argues *Epic's* interpretation of the FAA preemption clause undermines *Iskanian*'s reasoning and requires that California courts enforce PAGA representative-action waivers.  We reject these arguments.  Because *Epic* did not rule on the precise issue before *Iskanian,* we remain bound by *Iskanian's* holding.  Moreover, *Iskanian*'s holding and reasoning are not necessarily incompatible with *Epic.*

A. *Applicable Law*

Congress enacted the FAA in response to judicial hostility to arbitration and to ensure that private arbitration agreements are enforced according to their terms. (*American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. 228, 232 (*Italian Colors*).)  Under section 2 of the FAA, state laws inconsistent with the federal act's provisions and objectives are preempted.  (*AT&T Mobility LLC v. Concepcion* (2011) 563

10

U.S. 333, 343 (*Concepcion*).)  Under this rule, a state law contract defense is unenforceable if it applies only to arbitration contracts, derives its meaning from the fact an arbitration agreement is at issue, or interferes with the fundamental attributes of arbitration.  (*Id.* at pp. 341-344; see *Epic*, *supra*, 138 S.Ct. at p. 1622.)  But state laws applying to arbitration contracts are enforceable to the extent they are not in conflict with the FAA.  (*Concepcion*, at pp. 339, 343.)

In *Concepcion*, the United States Supreme Court held the FAA preempted a California Supreme Court decision (*Discover Bank v. Superior Court* (2005) 36 Cal.4th 148) holding that class action waivers are unenforceable in consumer contracts as against public policy.  (*Concepcion*, *supra*, 563 U.S. 333.)  The *Concepcion* court found the California Supreme Court's holding interfered with the "fundamental attributes of arbitration" (*id.* at p. 344) because arbitration is "poorly suited" to resolve class actions (*id.* at p. 350), emphasizing a class action's strict procedural formalities, complex notice requirements, and potential severe consequences to a defendant (*id.* at pp. 346-352).

In *Iskanian,* the California Supreme Court considered *Concepcion*'s impact on arbitration agreements in the employment context.  (*Iskanian*, *supra*, 59 Cal.4th at pp. 362-363.)  The *Iskanian* plaintiffs (who had signed arbitration agreements with class action and representative action waivers as part of their employment) asserted wage-and-hour class action claims and PAGA claims seeking statutory penalties for Labor Code violations.  (*Id.* at p. 361.)  The *Iskanian* court first addressed the issue whether the FAA preempts the state law rule, embodied in *Gentry v. Superior Court* (2007) 42 Cal.4th 443, providing class-action waivers in employment contracts generally violate public policy.

11

(*Iskanian*, at pp. 362-366.) The *Iskanian* court determined *Concepcion*'s holding and reasoning applied to class action waivers in employment contracts and overruled *Gentry*. (*Iskanian*, at pp. 362-366.) The *Iskanian* court specifically recognized that—as in *Concepcion*—the refusal to enforce the employment arbitration agreement class action waivers interfered with the fundamental attributes of arbitration. (*Iskanian*, at p. 364.) In so ruling, the *Iskanian* court rejected the employees' arguments that the class action waiver was unlawful under the National Labor Relations Act (NLRA), finding the NLRA did not override FAA's preemption provision. (*Iskanian*, at pp. 366-374.)

The *Iskanian* court, however, reached a different conclusion on the waiver of the employee's PAGA cause of action, holding a complete ban on PAGA actions is unenforceable. (*Iskanian*, *supra*, 59 Cal.4th at pp. 378-391.) The court's conclusion was predicated on its view that a PAGA claim functions as a law enforcement mechanism to implement state labor laws. (*Id.* at pp. 382, 386-387.) As explained by *Iskanian*, the Legislature enacted PAGA to address the lack of civil penalties and the dearth of available resources to enforce state labor laws in California's vast economy. (*Id.* at p. 379; *see Williams v. Superior Court* (2017) 3 Cal.5th 531, 545.) The Legislature sought to remedy these problems by deputizing employees to bring civil penalty actions on behalf of the state. (*Iskanian*, at p. 379.) To maintain some oversight, the Legislature required the employee to provide the state labor agency with written notice of the alleged violations and permitted an employee to pursue the PAGA claim in court only if the agency did not intervene. (*Id*. at p. 380; see § 2699.3, subd. (a)(2)(A).) A successful PAGA claimant is entitled to collect 25 percent of the civil penalties for the employees,

12

with the remainder going to the government. (§ 2699, subd. (i).) Although the agency does not have supervisorial authority over the employee in the litigation (see *Iskanian*, at pp. 390-391), the agency must be provided with prior notice of any proposed settlement, and the superior court must approve the final settlement (§ 2699, subd. (*l*)(2)).

After describing the statutory scheme and explaining the scheme's vital role in ensuring worker protections, the *Iskanian* court found that a predispute employment agreement in which an employee agrees to waive his or her right to bring representative claims under PAGA *in any forum* is contrary to public policy and thus unenforceable under state law. (*Iskanian*, *supra*, 59 Cal.4th at pp. 360, 382-384.) The court then determined this conclusion was not preempted by the FAA because it found the FAA was intended to govern the resolution of "*private* disputes, whereas a PAGA action is a dispute between an employer and the state Agency." (*Id.* at p. 384.) Based on the FAA's language, its legislative history, and prior United States Supreme Court decisions (*id.* at pp. 384-386), the *Iskanian* court stated: "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state* . . ." (*id.* at p. 386). The court stressed the nature of a PAGA claim as " ' "fundamentally a law enforcement action designed to protect the public and not to benefit private parties" ' " (*id.* at p. 387) and that " 'an aggrieved employee's action under the [PAGA] functions as a substitute for an action brought by the government itself' " (*id.* at pp. 387, 381). The court further observed that the government entity in a PAGA action "is always

13

the real party in interest" (*id.* at p. 382), and this is confirmed by "[t]he fact that any judgment in a PAGA action is binding on the government" (*id.* at p. 387).

In reaching these conclusions, the court analogized a PAGA claim to a qui tam action (*Iskanian*, *supra*, 59 Cal.4th at p. 382), and stated such actions generally fall outside the FAA's purview:

> "Nothing in the text or legislative history of the FAA nor in the Supreme Court's construction of the statute suggests that the FAA was intended to limit the ability of states to enhance their public enforcement capabilities by enlisting willing employees in qui tam actions. Representative actions under the PAGA, unlike class action suits for damages, do not displace the bilateral arbitration of private disputes between employers and employees over their respective rights and obligations toward each other. Instead, they directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws. . . . [¶] . . . [¶]
>
> "In sum, the FAA aims to promote arbitration of claims belonging to the private parties to an arbitration agreement. It does not aim to promote arbitration of claims belonging to a government agency, and that is no less true when such a claim is brought by a statutorily designated proxy for the agency as when the claim is brought by the agency itself. The fundamental character of the claim as a public enforcement action is the same in both instances." (*Id*. at pp. 387-388.)

At the conclusion of the *Iskanian* opinion, the court cautioned that its determinations left open procedural issues and remanded for the parties and court to address those issues. (*Iskanian, supra,* 59 Cal.4th at pp. 391-392.) In discussing these issues, the high court noted:

> "Although the arbitration agreement can be read as requiring arbitration of individual claims but not of representative PAGA claims, neither party contemplated such a bifurcation. [The plaintiff] has sought to litigate all claims in court, while [the employer] has sought to arbitrate the individual claims while barring the PAGA

14

representative claim altogether. In light of the principles above, neither party can get all that it wants. [The plaintiff] must proceed with bilateral arbitration on his individual damages claims, and [the employer] must answer the representative PAGA claims in some forum. The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration." (*Id.* at p. 391.)

Fifteen months after the California Supreme Court filed *Iskanian*, the Ninth Circuit considered the issue whether *Iskanian*'s holding regarding the unenforceability of predispute PAGA waivers in any forum (which it called the "*Iskanian* rule") was preempted by the FAA. (*Sakkab*, *supra*, 803 F.3d at p. 427.) The Ninth Circuit concluded *Iskanian*'s rule was not preempted, although on somewhat different grounds than the *Iskanian* court. (*Sakkab*, at pp. 431-440.)

The *Sakkab* court began its analysis with its view that the *Iskanian* court "expresse[d] no preference regarding whether individual PAGA claims are litigated or arbitrated." (*Sakkab*, *supra*, 803 F.3d at p. 434.) The court stated that *Iskanian* held "only that representative PAGA claims may not be waived outright" and "[t]he *Iskanian* rule does not prohibit the arbitration of any type of claim." (*Sakkab*, at p. 434.) The court then engaged in a lengthy examination of the nature of PAGA representative claims, and considered whether requiring such claims to be resolved *in arbitration* would interfere with the fundamental attributes of arbitration and thus preempt the *Iskanian* rule under the *Concepcion* rationale. (*Sakkab*, at pp. 435-439.)

Comparing PAGA claims with the class action procedure, the *Sakkab* court concluded that PAGA claims do not interfere with the fundamental attributes of arbitration because they do not diminish the parties' freedom to select informal arbitration

15

procedures. (*Sakkab, supra,* 803 F.3d at p. 436.) The court stated: "Because representative PAGA claims do not require any special procedures, prohibiting waiver of such claims does not diminish parties' freedom to select the arbitration procedures that best suit their needs. Nothing prevents parties from agreeing to use informal procedures to arbitrate representative PAGA claims. This is a critically important distinction between the *Iskanian* rule and the rule at issue in *Concepcion*." (*Ibid.*) The court added that its conclusion was "bolstered by the PAGA's central role in enforcing California's labor laws" and observed that "[a]s the California Supreme Court has explained, a PAGA action is a form of qui tam action. . . . The FAA was not intended to preclude states from authorizing qui tam actions to enforce state law." (*Id.* at pp. 439-440.)

At the conclusion of the opinion, the *Sakkab* court noted that although the "waiver of [the plaintiff's] representative PAGA claims may not be enforced," it is "unclear . . . whether the parties have agreed to arbitrate such surviving claims or whether they must be litigated instead." (*Sakkab*, *supra*, 803 F.3d at p. 440.) The court thus remanded the matter to the "district court and the parties to decide in the first instance where [the plaintiff's] representative PAGA claims should be resolved . . . ." (*Ibid.*)

More than two years later, the United States Supreme Court decided *Epic*. (*Epic*, *supra*, 138 S.Ct. 1612.) In *Epic,* an accountant sued his employer for violations of the federal Fair Labor Standards Act (FLSA) and California overtime law. (*Id.* at p. 1620.) The accountant sought to litigate the FLSA claim on behalf of a nationwide class under FLSA's collective action procedures (see 29 U.S.C. § 216(b)), and to pursue the state law claim as a class action. (*Epic*, at p. 1620.) The FLSA authorizes an employee to

16

maintain an action on behalf of himself and other "employees similarly situated" if the other employees sign written consent notices. (29 U.S.C. § 216(b).)

The *Epic* employer moved to compel arbitration under a provision in the parties' arbitration agreement requiring individualized arbitration. (*Epic, supra,* 138 S.Ct. at pp. 1619-1620.) The Ninth Circuit held this provision was unenforceable because it violates the NLRA by barring employees from engaging in " 'concerted activit[y].' " (*Epic*, at p. 1620.) In *Epic,* the United States Supreme Court disagreed. The court reconfirmed *Concepcion*'s holding that the FAA requires enforcement of class action waivers, and—as did the *Iskanian* court—determined the NLRA does not take precedence over the FAA on this issue. (*Epic*, at pp. 1623-1630.) Although most of the *Epic* opinion concerned an analysis of the NLRA as it relates to the FAA, the court also strongly reiterated the settled principles regarding the breadth of FAA preemption, and made clear that the FAA requires courts " 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.' " (*Id.* at p. 1621.) The court observed: "The parties . . . contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized *rather than class or collective action procedures. And this much the [FAA] seems to protect pretty absolutely*" (*Epic,* at p. 1621, italics added), citing *Concepcion, supra,* 563 U.S. 333; *Italian Colors*, *supra*, 570 U.S. 228; and *DIRECTV, Inc. v. Imburgia* (2015) ___ U.S. __ [136 S.Ct. 463], each of which involved disputes between private parties.

17

B. *Analysis*

Relying on *Epic*'s reiteration of the FAA's broad preemptive scope barring state laws interfering with arbitration provisions requiring individual arbitrations, Baker urges us to disavow *Iskanian*'s continuing validity on PAGA claims. We decline to do so.

On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 (*Auto Equity*); see *Tanguilig, supra,* 5 Cal.App.5th at p. 673; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 507.)

*Iskanian* held a ban on bringing PAGA actions in any forum violates public policy and that this rule is not preempted by the FAA because the claim is a governmental claim. (*Iskanian, supra*, 59 Cal.4th at pp. 384-389.) *Epic* did not consider this issue and thus did not decide the *same* question differently. (See *Whitworth v. Solarcity Corp* (N.D. Cal. 2018) 336 F.Supp.3d 1119, 1122-1123 [*Epic* is not irreconcilable with *Sakkab*].) *Epic* addressed a different issue pertaining to the enforceability of an individualized arbitration requirement against challenges that such enforcement violated the NRLA. (*Epic*, *supra*, 138 S.Ct. at pp. 1619, 1623-1630.)

Moreover, the cause of action at issue in *Epic* differs fundamentally from a PAGA claim. *Epic* held an employee who agrees to individualized arbitration cannot avoid this agreement by asserting claims *on behalf of other employees* under the FLSA or federal class action procedures. (*Epic*, *supra*, 138 S.Ct. at pp. 1619-1632.) The *Iskanian* court distinguished this type of factual scenario from the PAGA context. Forecasting *Epic's*

18

outcome, the *Iskanian* court said: "Our opinion today would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D. This pursuit of victim-specific relief by a party to an arbitration agreement on behalf of other parties to an arbitration agreement would be tantamount to a private class action, whatever the designation given by the Legislature. Under *Concepcion*, such an action could not be maintained in the face of a class waiver." (*Iskanian, supra,* 59 Cal.4th at pp. 387-388.) The *Iskanian* court found the PAGA claim was outside this rule because the employee had been deputized by the state to bring the qui tam claim on *behalf of the state, not on behalf of other employees.* (*Id.* at pp. 384-389.) Although on somewhat different grounds, the *Sakkab* court also found a refusal to enforce a total ban on the PAGA claim was not preempted by the FAA. (*Sakkab*, *supra*, 803 F.3d at pp. 431-440.)

*Epic*'s interpretation of the FAA's preemptive scope does not defeat *Iskanian*'s holding or reasoning for purposes of an intermediate appellate court applying the law. The *Iskanian* court reached a different conclusion from *Concepcion* on the enforceability of the contractual waiver—not because the *Iskanian* court interpreted the FAA differently from *Concepcion* on the preemption issue, but based on the unique nature of a PAGA claim as a qui tam type action, and the "PAGA litigant's status as 'the proxy or agent' of the state" and his or her "substantive role in enforcing our labor laws *on behalf of* state law enforcement agencies." (*Iskanian, supra,* 59 Cal.4th at pp. 388, italics added.)

Because the California Supreme Court found a PAGA claim involved a dispute not governed by the FAA, and the waiver would have precluded the PAGA action in *any*

19

forum, it held its PAGA-waiver unenforceability determination was not preempted. *Epic* did not reach the issue regarding whether a governmental claim of this nature is governed by the FAA, or consider the implications of a complete ban on a state law enforcement action. Because *Epic* did not overrule *Iskanian*'s holding, we remain bound by the California Supreme Court's decision. (See *Auto Equity, supra,* 57 Cal.2d at p. 455.)

### III. *Did Court Err in Refusing to Order PAGA Claim to Arbitration*

Baker contends that even if it cannot enforce the contractual provision barring a representative action in any forum, the court erred in refusing to order the PAGA action to arbitration (as a representative action and/or an individual action). Plaintiffs counter that they cannot be required to litigate the PAGA claims in arbitration because the state is the real party in interest in a PAGA claim and the state never consented or waived its right to bring its claim to court.

Before addressing these issues, we consider the threshold issue of whether the parties agreed to arbitrate PAGA representative claims in the event the bar on representative claims in any forum is unenforceable. If they did not, we need not reach the issue of whether such arbitration agreement is enforceable with respect to a PAGA claim. (See *California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204 ["in ruling on a petition to compel, the court must determine whether the parties entered into an enforceable agreement to arbitrate that reaches the dispute in question].) Without an agreement to arbitrate a claim, a court has no authority to order the claim to arbitration.

20

Based on our review of the Arbitration Agreement and the parties' briefs and supplemental briefs, we are satisfied the parties agreed (through the agreement's severance clause) that if any provision (such as the representative claim waiver in all forums) is found to be invalid, the finding does not preclude the enforcement of any remaining portion of the agreement. We are also satisfied that the scope of the parties' arbitration agreement encompasses PAGA representative actions (neither party has suggested otherwise). Thus, the issue before us is whether the agreement to arbitrate a PAGA representative action is enforceable in this case.

As discussed above, this precise issue was not addressed in *Iskanian* or *Sakkab*. *Iskanian* held a waiver of an employee's right to bring a representative action *in any forum* violated public policy and that this rule was not preempted by the FAA. (*Iskanian*, *supra*, 59 Cal.4th at pp. 378-389.) It did not address the question whether an employee's predispute agreement to arbitrate PAGA actions is enforceable by requiring arbitration of the claim. It noted only that the parties' particular arbitration agreement appeared to "read as requiring arbitration of individual claims but not of representative PAGA claims," and therefore the plaintiff "must proceed with bilateral arbitration on his individual damages claims, and [the employer] must answer the representative PAGA claims in some forum." (*Id.* at p. 391.) The *Sakkab* court assumed PAGA claims could be arbitrated, but did not address the nature of an enforceable arbitration agreement. (*Sakkab*, *supra*, 803 F.3d at p. 440.) The court specifically stated that "it is unclear . . . whether the parties have agreed to arbitrate such surviving claims or whether they must be litigated instead," and thus remanded "for the district court and the parties to decide in

21

the first instance where [the plaintiff's] representative PAGA claims should be resolved . . . ." (*Ibid*.)

Although neither *Iskanian* nor *Sakkab* decided this issue, several California Courts of Appeal have done so. These courts have uniformly held that an employee's predispute agreement to arbitrate PAGA claims is not enforceable without the state's consent. (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 869-872 (*Julian*); *Betancourt v. Prudential Overall Supply* (2017) 9 Cal.App.5th 439, 445-449 (*Betancourt*); *Tanguilig, supra,* 5 Cal.App.5th at pp. 677-680.) Relying on the rationale underlying *Iskanian's* PAGA waiver-enforceability and FAA-preemption conclusions, these courts reasoned that because the state is the real party in interest in a PAGA action and a PAGA plaintiff asserts the claim solely on behalf of, and as the proxy for, the state, the employee's predispute arbitration agreement does not subject the claim to arbitration because the state never agreed to arbitrate the claim. (*Julian,* at pp. 871-872; *Betancourt*, at pp. 448-449; *Tanguilig*, at pp. 677-680.)

Under these decisions, predispute arbitration agreements generally do not support the compelled arbitration of PAGA claims because the state retains control of the right underlying the employee's PAGA claim at least until the state has provided the employee with implicit or explicit authority to bring the claim. (See *Julian*, *supra*, 17 Cal.App.5th at pp. 870-872.) At that point, an employee's waiver of the trial right and an agreement to arbitrate may be enforceable. (*Ibid.*) But before that time, the employee has no authority or authorization to waive the state's rights to bring the state's claims in court.

22

Under the logic of *Iskanian*'s PAGA rulings, we agree with these conclusions. Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement. Under state and federal law, an arbitration agreement applies only to the parties who agreed to its terms and a party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration. (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245.) In this case, plaintiffs signed the Arbitration Agreement, agreeing to bring all employment-related claims to arbitration. The state did not sign the agreement, nor did it consent to its terms. Even assuming that in some circumstances an agent can waive a party's jury trial right, plaintiffs were not acting as the state's agent or assignee at the time they signed the arbitration agreement. They signed the agreements in 2014 and 2015, before they were "aggrieved employees" entitled to bring the PAGA action on the state's behalf. (See § 2699, subd. (c) [" 'aggrieved employee' means any person who was employed by the alleged violator *and against whom one or more of the alleged violations was committed,*" italics added].)

This determination is consistent with conclusions reached by courts addressing qui tam actions brought under the federal False Claims Act (31 U.S.C. § 3729 et seq.) that an employee's arbitration agreement is not enforceable because the government was not a party to the agreement. (See *Mikes v. Strauss* (S.D.N.Y. 1995) 889 F.Supp. 746, 755 [dicta]; *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC* (D. Nev.

23

2016) 2016 U.S. Dist. LEXIS 76490.)  The determination is also supported by California law providing that a person who signs an agreement in a particular capacity is not necessarily bound when acting in a different capacity.  (See *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 377; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474-475.)

We recognize that several federal courts have reached a different conclusion on this issue regarding the enforceability of a PAGA arbitration requirement contained in a predispute arbitration agreement.  (*Valdez v. Terminix International Co. Ltd. P'ship* (9th Cir. 2017) 681 Fed. Appx. 592 (*Valdez*); *Wulfe v. Valero Ref. Co.-Cal.* (9th Cir. 2016) 641 Fed. Appx. 758, 760; *Cabrera v. CVS Rx Services, Inc.* (N.D. Cal. 2018) __ F.Supp.3d __ [2018 U.S. Dist. LEXIS 43681 at p. *12] [compelling arbitration of PAGA claims because, while "the law is clear" that PAGA claims cannot be waived, "nothing prevents them from being arbitrated"].)

The *Valdez* court described the reasoning underlying this conclusion.  (*Valdez, supra,* 681 Fed. Appx. 592.)  The *Valdez* district court had found (similar to the *Tanguilig* and *Betancourt* courts) that a PAGA claim " 'belongs to the state, and the state has not waived the judicial forum,' " and therefore the PAGA claims could not be compelled to arbitration.  (*Valdez,* at p. 594.)  The Ninth Circuit rejected this analysis and declined to create a rule that PAGA claims "categorically cannot proceed to arbitration," explaining: "*Iskanian* and *Sakkab* clearly contemplate that an individual employee can pursue a PAGA claim in arbitration, and thus that individual employees can bind the state to an

24

arbitral forum. . . . *Iskanian* recognized that although '[t]he government entity on whose behalf the plaintiff files suit is always the real party in interest in the suit,' [citation], 'the judgment in a PAGA representative action is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding' [citation]. Employees can bind government agencies because they 'represent[] the same legal right and interest' as the government in PAGA proceedings. [Citations.] Indeed, '[a]n employee plaintiff suing . . . under the PAGA does so as the proxy *or agent* of the state's labor law enforcement agencies.' [Citations.] Accordingly, an individual employee, acting as an agent for the government, can agree to pursue a PAGA claim in arbitration. *Iskanian* does not require that a PAGA claim be pursued in the judicial forum; it holds only that a complete waiver of the right to bring a PAGA claim is invalid. [Citation.] [¶] *Sakkab* likewise recognized that individual employees may pursue PAGA claims in arbitration." (*Ibid.*)

We are not persuaded by *Valdez*'s analysis on this issue. The court focused on the employee's role as the state's proxy (with the ability to bind the state and other employees) to support a rule that the employee's signature on a predispute arbitration agreement waives the employee's rights to bring the *state's* enforcement claims in court. However, under the PAGA statutory scheme, the plaintiff does not assume this proxy role until it is an " 'aggrieved employee.' " (§ 2699, subds. (a), (c).) When an employee signs a predispute arbitration agreement, he or she is signing the agreement solely on his or her own behalf and not on behalf of the state or any other third party. Thus, the agreement cannot be fairly interpreted to constitute a waiver of the state's rights to bring a PAGA

25

penalties claim in court (through a qui tam action by its deputized employee). Further, *Valdez*'s suggestion that *Sakkab* "recognized" PAGA claims could be compelled to arbitration overstates the court's holding. (*Valdez*, *supra*, 681 Fed. Appx. at p. 594.) Although *Sakkab* did assume PAGA claims can be arbitrated, the *Sakkab* court did not consider the issue whether a private party can waive the state's right to litigate its PAGA claims in court *before any dispute has arisen*. Instead, the court remanded for a determination on the foundational question as to the nature of the parties' arbitration agreement regarding the PAGA claim. (*Sakkab*, *supra*, 803 F.3d at p. 440.)

We recognize there are different ways of viewing a qui tam lawsuit regarding the true claim owner and whether the state *and* the employee can both be considered to be real parties in interest in the lawsuit for purposes of evaluating an employee's authority to waive rights to bring claims in court. (See generally Andrews, *Whistling in Silence: The Implications of Arbitration on Qui Tam Claims under the False Claims Act* (2015) 15 Pepp. Disp. Resol. L.J. 203, 210-230.) But we are not writing on a clean slate and are compelled to follow our high court's views regarding a California statute. Moreover, when we provided the parties the opportunity to submit supplemental briefs on the issue of the propriety of *Valdez*'s holding, Baker did not provide any analysis supporting its position, other than to say that neither *Iskanian* nor *Sakkab* held that representative actions cannot be compelled to arbitration. This comment is true, but unhelpful. Because the *Iskanian* court believed the parties' particular arbitration contract did not contain the parties' agreement to arbitrate PAGA representative actions, it had no need to consider the issue before us in this case. The *Sakkab* court assumed the arbitrability of a PAGA

26

claim, but remanded the matter for a determination regarding the meaning of the parties' arbitration agreement.

In sum, we agree with the California Courts of Appeal that have held *Iskanian*'s view of a PAGA representative action necessarily means that this claim cannot be compelled to arbitration based on an employee's predispute arbitration agreement absent some evidence that the state consented to the waiver of the right to bring the PAGA claim in court.[3] There was no such evidence produced in this case.

Finally, we reject Baker's claim that the court erred in failing to order plaintiffs' individual PAGA claims to arbitration. Generally, every PAGA action seeking penalties " '*is* a representative action on behalf of the state.' " (*Iskanian, supra,* 59 Cal.4th at p. 387, quoting *id.* at p. 394 (Chin, J., concurring), italics added.) Thus, a single representative claim cannot be split into an arbitrable individual claim and a nonarbitrable representative claim. (*Williams v. Superior Court* (2015) 237 Cal.App.4th 642, 649.)

---

[3] Baker does not contend, nor do we find, this determination conflicts with the FAA. Because PAGA actions are public enforcement actions, they generally fall outside the scope of the FAA. (*Iskanian, supra,* 59 Cal.4th at pp. 386-387, 388-389; accord, *Tanguilig*, *supra*, 5 Cal.App.5th at p. 679 ["*Iskanian* holds that qui tam actions were never intended to be within the ambit of the FAA"].) "Representative actions under the PAGA . . . do not displace the bilateral arbitration of private disputes between employers and employees . . . , they directly enforce *the state's* interest in penalizing and deterring employers who violate California's labor laws." (*Iskanian*, at p. 387.)

DISPOSITION

Order affirmed.  Appellant to bear respondents' costs on appeal.

HALLER, J.

WE CONCUR:

McCONNELL, P. J.

NARES, J.

28