Filed 4/28/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JILL WING,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHICO HEALTHCARE &<br>WELLNESS CENTRE, LP,<br><br>    Defendant and Appellant. | B310232<br><br>(Los Angeles County<br>Super. Ct. No. BC719077) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Affirmed.

Fisher & Phillips, Grace Y. Horoupian, Shaun J. Voight, Rebecca S. King and Raymond W. Duer for Defendant and Appellant.

Mara Law Firm, David Mara and Matthew Crawford for Plaintiff and Respondent.

————————————————

In this appeal, Chico Healthcare & Wellness Centre, LP asks us to reconsider the California Supreme Court's decision in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) in light of subsequent United States Supreme Court authority. The trial court relied on *Iskanian* to deny Chico's motion to compel arbitration of Jill Wing's Private Attorneys General Act (PAGA) claims. PAGA allows an aggrieved employee to sue for civil penalties under the Labor Code as a representative of the state. (Lab. Code, § 2699 et seq.)[1]

Chico contends two United States Supreme Court cases — *Epic Systems Corp. v. Lewis* (2018) __ U.S. __ [138 S.Ct. 1612] (*Epic Systems*) and *Kindred Nursing Centers Ltd. Partnership v. Clark* (2017) __ U.S. __ [137 S.Ct. 1421] *(Kindred Nursing)* — impliedly overruled *Iskanian*, but Chico itself acknowledges these cases do "not [address] PAGA directly . . . ." As we set out below, *Epic Systems* and *Kindred Nursing* did not decide the same question *Iskanian* decided. We affirm the order denying the motion to compel arbitration.

### *PROCEDURAL BACKGROUND*

On October 17, 2017, Wing was hired to work for Chico as a receptionist at a skilled nursing facility. As a condition of her employment, Wing agreed to be bound by Chico's Alternative Dispute Resolution Policy (ADR Policy), which provided that "final and binding arbitration" would be the exclusive means for resolving "covered disputes" between the employee and employer.

The ADR Policy defined "covered disputes" as including "any dispute arising out of or related to my employment, the terms and conditions of my employment and/or the termination of

---

[1] All further undesignated statutory references are to the Labor Code.

2

your employment [*sic*], including, but not limited to, the following:  [¶]  Alleged violations of federal, state and/or local constitutions, statutes or regulations; [¶]  . . . [¶]  Claims alleging failure to compensate for all hours worked, failure to pay overtime, failure to pay minimum wage, failure to reimburse expenses, failure to pay wages upon termination, failure to provide accurate, itemized wage statements, failure to provide meal and/or rest breaks, entitlement to waiting time penalties and/or other claims involving employee wages, including, but not limited to, claims brought under the Fair Labor Standards Act and any other statutory scheme related to wages or working hours . . . ."

The ADR Policy included a waiver of class or representative actions:  "I understand and agree this ADR Program prohibits me from joining or participating in a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claim of others."

On June 11, 2018, Wing provided statutorily required notice to the Labor and Workforce Development Agency of alleged Labor Code violations by her employer.[2]  (§ 2699.3.)  The agency did not respond to her notice within the time provided by statute, allowing Wing to file PAGA representative claims for wage,

---

[2]     Wing initially believed her employer was Rockport Administrative Services, LLC.  She amended the notice to the agency and her subsequent complaint when she learned Chico Healthcare was her employer.

3

overtime, meal break, and other Labor Code violations.[3] She filed her complaint on August 22, 2018. Wing's lawsuit also alleged class claims. Relying on the ADR Policy, Chico requested Wing stipulate to arbitrate her individual claims, strike her class claims, and stay her PAGA claims pending the outcome of arbitration. Wing refused; she instead amended her complaint to drop the class claims, leaving only the PAGA claims that were asserted on behalf of herself and all other similarly aggrieved employees. After an unsuccessful mediation, Chico moved to compel arbitration of Wing's PAGA claims.

The trial court denied the motion. In its statement of decision, the court found it was bound to follow "the Supreme Court precedent of *Iskanian* and the subsequent overwhelming authority reaffirming its holding." Chico timely appealed.

## DISCUSSION

On appeal, Chico argues the trial court erred when it relied on *Iskanian* to deny the motion to compel arbitration. Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," we review that decision de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

---

[3] PAGA requires that an employee give written notice both to the agency and the employer of an alleged Labor Code violation. (§ 2699.3, subd. (a)(1); *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*).) If the agency does not investigate, does not issue a citation, or fails to respond within a specified time, the employee may assert PAGA claims as a representative of the state. (§ 2699.3, subd. (a)(2); *LaFace v. Ralphs Grocery Co.* 75 Cal.App.5th 388, 394.)

4

1. ***Relevant Law***

The Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) was enacted to address perceived judicial hostility to arbitration agreements. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339.) "The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" (*Id.* at p. 344.) "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." (*Id.* at p. 341.) Thus, a contract defense based on state law is preempted if it applies only to arbitration contracts or interferes with the fundamental attributes of arbitration. (*Id.* at pp. 341–344.) State laws relating to arbitration contracts are enforceable to the extent they do not conflict with the FAA. (*Id.* at pp. 339, 343.)

PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian, supra*, 59 Cal.4th at p. 360.) Before PAGA was enacted, only the state could sue employers for civil penalties under the Labor Code. (*Kim, supra*, 9 Cal.5th at p. 80.) "A PAGA claim is legally and conceptually different from an employee's own suit for damages and statutory penalties. An employee suing under PAGA 'does so as the *proxy or agent of the state's labor law enforcement agencies*.' Every PAGA claim is 'a dispute between an employer and the state.' Moreover, the civil penalties a PAGA plaintiff may recover on the state's behalf are distinct from the statutory damages or penalties that may be available to employees suing for individual violations. Relief under PAGA is

designed primarily to benefit the general public, not the party bringing the action. 'A PAGA representative action is therefore a type of qui tam action,' conforming to all 'traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation.' The 'government entity on whose behalf the plaintiff files suit is always the real party in interest.' " (*Ibid.*, internal citations omitted.)

In *Iskanian*, our Supreme Court examined an arbitration agreement that, like Chico's ADR Policy, contained a waiver of representative actions, including PAGA claims. (*Iskanian, supra*, 59 Cal.4th at p. 377.) *Iskanian* held "an employee's right to bring a PAGA action is unwaivable" and that such a rule was not preempted by the FAA to the extent the rule barred "predispute waiver[s] of an employee's right to bring an action that can only be brought by the state or its representatives." (*Id*. at pp. 383, 388.) The court reasoned, "the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [Labor and Workforce Development] Agency." (*Iskanian, supra*, 59 Cal.4th at p. 384.)

The Ninth Circuit is in accord: "[T]he *Iskanian* rule does not stand as an obstacle to the accomplishment of the FAA's objectives, and [*Iskanian*] is not preempted." (*Sakkab v. Luxottica Retail N. Am., Inc.* (9th Cir. 2015) 803 F.3d 425, 427 (*Sakkab*).)[4]

---

[4]    In *Valdez v. Terminix Int'l Co. Ltd. Partnership* (9th Cir. 2017) 681 F.Appx. 592, 593, the Ninth Circuit affirmed its

6

In *Kindred Nursing* and *Epic Systems*, issued three and four years, respectively, after *Iskanian*, the United States Supreme Court reaffirmed the broad reach of the FAA. In *Kindred Nursing*, the high court considered the Kentucky Supreme Court's "clear-statement rule," which held a power of attorney could not authorize a legal representative to enter into an arbitration agreement unless the representative had specific authority to " 'waive his principal's constitutional right to access the courts and to trial by jury.' " (*Kindred Nursing, supra*, 137 S.Ct. at pp. 1425–1426.) *Kindred Nursing* held the clear-statement rule was "too tailor-made to arbitration agreements — subjecting them, by virtue of their defining trait, to uncommon barriers — to survive the FAA's edict against singling out those contracts for disfavored treatment." (*Id.* at p. 1427.)

*Epic Systems* held the FAA requires courts to enforce class or collective action waivers in employment agreements that mandate individualized arbitration. (*Epic Systems*, *supra*,

holding in *Sakkab* that the *Iskanian* rule is not preempted by the FAA. *Valdez* held "an individual employee, acting as an agent for the government, can agree to pursue a PAGA claim in arbitration. *Iskanian* does not require that a PAGA claim be pursued in the judicial forum; it holds only that a complete waiver of the right to bring a PAGA claim is invalid. [Citation.] [¶] *Sakkab* likewise recognized that individual employees may pursue PAGA claims in arbitration." (*Id.* at p. 594.) Chico does not cite to or examine *Valdez*. To the extent Chico relies on the same reasoning as *Valdez* to argue Wing had authority to bind the state to the ADR Policy prior to her PAGA claims, we reject this argument and agree with *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 623–624 (*Correia*) that an employee does not become a proxy of the state under PAGA until he or she is an "aggrieved employee."

7

138 S.Ct. at p. 1619.)  Following *Epic Systems,* California appellate courts uniformly concluded it did not overrule *Iskanian.* (See, e.g., *Williams v. RGIS, LLC* (2021) 70 Cal.App.5th 445, 451–454 (*Williams*); *Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538 (*Herrera*); *Winns v. Postmates Inc.* (2021) 66 Cal.App.5th 803, 812–813; *Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 872; *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477 (*Collie*); *Correia, supra*, 32 Cal.App.5th at p. 620.)

## 2.    *Iskanian Remains the Law*

Recognizing that "overwhelming authorities" have concluded *Epic Systems* did not invalidate *Iskanian*, Chico relies on *Kindred Nursing* to do so.  *Kindred Nursing* was published one year before *Epic Systems* but is not cited in any California published case involving PAGA claims.  According to Chico, there is no distinction between the agent binding the principal to arbitration under a power of attorney in *Kindred Nursing* and an employee binding the State of California in a PAGA action.  Combined with *Epic Systems's* holding that the FAA requires courts to enforce arbitration agreements that waive class or collective actions in favor of individualized proceedings, Chico contends these cases require us to conclude the *Iskanian* rule is preempted by the FAA.  We disagree.  Chico asks us to resolve "the tension between *Iskanian* and the recent United States Supreme Court opinions" that Chico has cited.  We frame the issue differently:  does the reasoning of *Kindred Nursing* and

8

*Epic Systems* undermine the force of our Supreme Court's holding in *Iskanian*?[5]

We answer in the negative. Chico does not dispute the "same question" standard articulated by *Correia* to determine when an intervening United States Supreme Court decision overrules a California Supreme Court decision. (*Correia, supra,* 32 Cal.App.5th at p. 619.) Chico asserts the United States Supreme Court need not specifically cite to *Iskanian* or PAGA for its decisions to resolve the "*same* question." We agree with this general proposition but, as we explain below, *Epic Systems* and *Kindred Nursing* are distinguishable and do not conflict with *Iskanian*. These cases do not suggest that we should disregard our Supreme Court's controlling authority. (Cf. *In re Harris* (1971) 20 Cal.App.3d 632, 634 [U.S. Supreme Court decision holding Ohio Criminal Syndicalism Act unconstitutional was conclusive on unconstitutionality of California's similar statute]; *County of Santa Clara v. Superior Court* (1992) 2 Cal.App.4th 1686, 1691, fn. 3 ["The constraints of the common law method and of our position in the judicial hierarchy require that we consider only the case before us, and that we do so in light of the decisions of other courts to the extent those decisions control ours either directly or by compelling analogy"].)

Starting with *Epic Systems*, we need not repeat the reasoned analysis by the courts that have rejected the argument that *Epic Systems* disapproved *Iskanian*. (*Williams, supra,*

---

[5] Our Supreme Court affirmed *Iskanian* after *Epic Systems* and *Kindred Nursing* by applying it to determine whether the recovery of civil penalties under section 558 is immunized from predispute waivers of arbitration. (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 187.)

9

70 Cal.App.5th at pp. 451–454; *Herrera, supra,* 67 Cal.App.5th at p. 542; *Winns v. Postmates Inc., supra,* 66 Cal.App.5th at p. 812; *Olson v. Lyft, Inc., supra,* 56 Cal.App.5th at p. 872; *Collie, supra,* 52 Cal.App.5th at p. 482; *Correia, supra,* 32 Cal.App.5th at p. 620.)  We agree with them.

Adding *Kindred Nursing* to the equation does not change the legal sum.  As in *Epic Systems, Kindred Nursing* involved private actions between private parties asserting private rights.  It did not involve an action between an employer and a representative of the state to recover civil penalties on the state's behalf to benefit the general public.  To put it directly, *Kindred Nursing* did not address whether a worker may waive the right to bring a representative action on behalf of a state government.[6]

---

[6]     *Kindred Nursing* is also distinguishable on its facts.  There, the representatives signed the arbitration agreements on behalf of their principals under a power of attorney.  That is, the principals had already agreed to be bound by their representative's actions at the time the agreements were executed. (*Kindred Nursing, supra,* 137 S.Ct. at pp. 1425–1426.)  Here, Wing agreed to be bound by the ADR Policy one year before her PAGA claims arose.  As we have observed, an employee does not become a proxy of the state under PAGA until he or she is an "aggrieved employee." (*Correia, supra,* 32 Cal.App.5th at pp. 623–624.)  Wing "executed the agreement in [her] individual capacity.  The state had not deputized [her] to act at the time, and [she] therefore could not agree to arbitrate on behalf of the state." (*Collie, supra,* 52 Cal.App.5th at p. 482.)  "Without the state's consent, a predispute agreement between an employee and an employer cannot be the basis for compelling arbitration of a representative PAGA claim because the state is the owner of the claim and the real party in interest, and the state was not a

10

Nor does *Kindred Nursing* even mention PAGA, qui tam or other similar representative actions, or suggest that its holding might extend to such claims.  In short, *Kindred Nursing* did not consider the same question that *Iskanian* put to rest.

### ***DISPOSITION***

The order denying the motion to compel arbitration is affirmed.  Wing is to recover her costs on appeal.


RUBIN, P. J.

WE CONCUR:


BAKER, J.


KIM, J.

---

party to the arbitration agreement." (*Correia, supra,* 32 Cal.App.5th at p. 622.)