Filed 10/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| BRANDON OLSON,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LYFT, INC.,<br><br>Defendant and Appellant. | A156322<br><br>(San Francisco County<br>Super. Ct. No.<br>CGC-18-566788) |

Brandon Olson is a driver for Lyft, Inc. (Lyft), whose terms of service include an agreement he could not bring a Private Attorney General Act (PAGA) claim in court and that disputes with Lyft must be resolved by individual arbitration.  Olson sued Lyft alleging six PAGA claims, which Lyft petitioned to compel to arbitration.  The petition acknowledged that *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) precluded enforcement of PAGA waivers, but asserted that *Iskanian* was wrongly decided and in any event was no longer good law in light of the 2018 opinion of the United States Supreme Court in *Epic Systems Corp. v. Lewis* (2018) 138 S.Ct. 1612 (*Epic Systems*). The trial court denied the petition in a comprehensive order rejecting Lyft's arguments.

Lyft appeals and, represented by two prominent law firms, provides us with 96 pages of briefing, beginning with an argument as to what we "must follow" from United States Supreme Court opinions, going on to reassert its unsuccessful arguments below.  Lyft's opening brief cites 12 United States

1

Supreme Court cases, two cases from the Fifth Circuit Court of Appeals, and, indeed, a 2013 case from an Ohio District Court. Olson, represented by a well-known appellate boutique, provides 54 pages of his own, included within which is a scholarly exposition of California jurisprudence dealing with arbitration.

We need not engage in any similar discussion, as we reject Lyft's position based on *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602 (*Correia*), an opinion that thoughtfully analyzed—and rejected—the identical argument Lyft makes here. Other post-*Epic Systems* cases have agreed, including the only two other published Court of Appeal decisions and numerous California federal cases. Accordingly, we affirm the order denying arbitration.

## BACKGROUND

Olson worked as a driver for Lyft, and as such had to agree to its Terms of Service (TOS) which, as pertinent here, begin with this:

"THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS YOU AND LYFT HAVE AGAINST EACH OTHER CAN BE BROUGHT (SEE SECTION 17 BELOW). THESE PROVISIONS WILL, WITH LIMITED EXCEPTION, REQUIRE YOU TO SUBMIT CLAIMS YOU HAVE AGAINST LYFT TO BINDING AND FINAL ARBITRATION ON AN INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS, GROUP OR REPRESENTATIVE ACTION OR PROCEEDING. AS A DRIVER OR DRIVER APPLICANT, YOU HAVE AN OPPORTUNITY TO OPT OUT OF ARBITRATION WITH RESPECT TO CERTAIN CLAIMS AS PROVIDED IN SECTION 17."

The referenced section 17 then provides in pertinent part as follows:

2

"**17.  DISPUTE RESOLUTION AND ARBITRATION AGREEMENT**

"**(a)  Agreement to Binding Arbitration Between You and Lyft.**

"YOU AND LYFT MUTUALLY AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISUPTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION, as set forth below.  This agreement to arbitrate ('Arbitration Agreement') is governed by the Federal Arbitration Act and survives after the Agreement terminates or your relationship with Lyft ends. . . .  Except as expressly provided . . . [¶] . . . ALL DISPUTES AND CLAIMS BETWEEN US . . . SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION SOLELY BETWEEN YOU AND LYFT.  [¶] . . . [¶]

"BY AGREEING TO ARBITRATION, YOU UNDERSTAND THAT YOU AND LYFT ARE WAIVING THE RIGHT TO SUE IN COURT OR HAVE A JURY TRIAL FOR ALL CLAIMS, EXCEPT AS EXPRESSLY OTHERWISE PROVIDED IN THIS ARBITRATION AGREEMENT.  This Arbitration Agreement is intended to require arbitration of every claim or dispute that can lawfully be arbitrated, except for those claims and disputes which by the terms of this Arbitration Agreement are expressly excluded from the requirement to arbitrate.  [¶] . . . [¶]

"**(c)  Representative PAGA Waiver.**

"Notwithstanding any other provision of this Agreement or the Arbitration Agreement, to the fullest extent permitted by law:  (1) you and Lyft agree not to bring a representative action on behalf of others under the Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 et seq., in any court or in arbitration, and (2) for any claim brought on a private attorney general basis, including under the California PAGA, both

3

you and Lyft agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law) (collectively 'representative PAGA Waiver').  [¶] . . . [¶]

"**(g)  Exceptions to Arbitration.**

"This Arbitration Agreement shall not require arbitration of the following types of claims:  (1) small claims actions brought on an individual basis that are within the scope of such small claims court's jurisdiction; (2) a representative action brought on behalf of others under PAGA or other private attorneys general acts, to the extent the representative PAGA Waiver in Section 17(c) of such action is deemed unenforceable by a court of competent jurisdiction under applicable law not preempted by the FAA; (3) claims for workers' compensation, state disability insurance and unemployment insurance benefits; and (4) claims that may not be subject to arbitration as a matter of generally applicable law not preempted by the FAA."

The TOS are updated periodically, and drivers had to agree to the updated terms in order to continue offering rides through the Lyft app.  In May 2018, Olson agreed to the updated terms and that same month filed a class action lawsuit alleging that Lyft misclassified him as an independent contractor rather than an employee.  The complaint asserted violations of the Labor Code and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

4

In August, Olson filed a first amended complaint in which he was replaced as class representative by a new plaintiff, which amended complaint also added representative claims under PAGA. And in October, Olson filed a second amended complaint, the operative complaint here. The second amended complaint added a new class representative who alleged six non-PAGA claims, and also alleged six PAGA claims on behalf of Olson.

Lyft petitioned to compel arbitration of Olson's PAGA claims. The petition argued that although Olson asserted PAGA claims as a representative for "aggrieved employees," the arbitration provision to which he agreed contained a PAGA representative-action waiver, and was thus governed by the Federal Arbitration Act (FAA), which, Lyft argued, required that Olson arbitrate on an individual basis. Lyft's petition acknowledged that *Iskanian* precluded the enforcement of PAGA representative-action waivers, but argued that *Iskanian* was wrongly decided under prior FAA precedent and in any event was no longer good law because of *Epic Systems*.[1] Finally, Lyft argued that even if *Iskanian* survived *Epic Systems*, Olson should be compelled to arbitrate the request for victim-specific relief alleged in the PAGA claims because this request did not seek representative relief.

Olson opposed the petition based on *Iskanian*, asserting that *Epic Systems* had no bearing on the issue.

Following Lyft's reply, the petition (along with other matters) came on for hearing before a most experienced superior court judge, the Honorable Curtis Karnow. Following a lengthy hearing, Judge Karnow issued a 14-page order, which, as pertinent here, rejected Lyft's arguments, holding as follows:

---

[1] Arguing that a California Supreme Court case was "wrongly decided" is not productive in a trial court. Or here. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.)

5

"Under *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 the PAGA waiver is unenforceable; see e.g., *Tanguilig v. Bloomingdale's Inc.* (2016) 5 Cal.App.5th 665, 670, 673–680. [¶] . . . [¶]

"Lyft contends that *Iskanian* is no longer good law as a result of *Epic Systems Corp. v. Lewis* (2018) 138 S. Ct. 1612. Lyft argues that *Iskanian* held that the Federal Arbitration Act (FAA) is inapplicable to statutory claims. Not true. *Iskanian* knew 'the high court has found the FAA applicable to *statutory* claims between parties to an arbitration agreement.' *Iskanian*, 59 Cal.4th at 384 (emphasis supplied).

"And Lyft is wrong to compare the statutory claims it says were at issue in *Epic Systems* (i.e., the Fair Labor Standards Act (FLSA) claims) with PAGA. First, the argument was not even made in the U.S. Supreme Court that the FLSA 'overcomes' the FAA to permit collective actions in court. *Epic Sys.*, 138 S. Ct. at 1626. Second, *Iskanian* did not hold that representative PAGA actions are beyond the scope of the FAA because a PAGA action is a statutory procedure; rather, *Iskanian* held that a PAGA action is a dispute between the state on the one hand, and the employer on the other. *Iskanian* 59 Cal.4th at 385–387. And since the state was not a party to the arbitration agreement, the agreement does not control. This is a decision which rests on state (i) contract law and (ii) statutory interpretation, both committed to the state supreme court in the final instance; these were not grounds expressly or implicitly overruled by the U.S. Supreme Court."

Lyft filed a timely appeal.

## DISCUSSION

Lyft's opening brief begins with arguments that "California courts must follow intervening United States Supreme Court decisions, instead of prior California Supreme Court decisions, when they address similar issues

6

differently," going on that "Courts of Appeal are not bound by California State Supreme Court decisions that are in conflict with subsequent United States Supreme Court decisions." The essence of Lyft's position begins on page 26 of its brief, where it argues: "Due to intervening United States Supreme Court precedent, the *Iskanian* PAGA Rule prohibiting the enforcement of a representative-action waiver is no longer good law, and the trial court erred in following it." The argument has two subparts: (1) "*Epic Systems* undermines *Iskanian's* distinction between public and private actions"; and (2) "*Epic Systems* precludes the *Iskanian* PAGA Rule's outright ban on arbitration of representative PAGA claims."

We reject the arguments based on *Correia*, joining other courts as well. But before discussing *Correia*, we begin with brief discussion of the two cases involved.

The holdings of *Iskanian* are accurately distilled by Lyft, its brief describing the case as one "in which the California Supreme Court held, as a matter of state law, that California courts may not enforce an arbitration agreement's waiver of representative PAGA proceedings, and further held, as a matter of federal law, that the . . . FAA did not preempt this prohibition." Reaching those holdings, our Supreme Court noted that the Legislature enacted PAGA to enhance the state's enforcement of labor laws by "allow[ing] aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies [are] to retain primacy over private enforcement efforts." (*Iskanian, supra*, 59 Cal.4th at p. 379.) And while PAGA empowers aggrieved employees to act as the agent of the Labor Commissioner to bring representative actions to recover statutory civil penalties for their employers'

7

violations, the governmental entity "is always the real party in interest." (*Id.* at p. 382.)

"A PAGA representative action is therefore a type of qui tam action." (*Iskanian*, *supra*, 59 Cal.4th at p. 382.) " 'Traditionally, the requirements for enforcement by a citizen in a *qui tam* action have been (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring suit to recover the penalty.' [Citation.] The PAGA conforms to these traditional criteria, except that a portion of the penalty goes not only to the citizen bringing the suit but to all employees affected by the Labor Code violation." (*Ibid*.) And "[t]he civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." (*Id.* at p. 381.) In sum, a suit to recover civil penalties is " ' "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." ' " (*Id.* at p. 387.)

*Epic Systems* was one of three cases consolidated by the United States Supreme Court that raised the issue of the FAA's preemptive effect over private employment arbitration agreements prohibiting class and collective actions. The Court considered whether the FAA was in conflict with other federal laws, including section 7 of the National Labor Relations Act (NLRA), which guarantees workers the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. (*Epic Systems*, *supra*, 138 S.Ct. at p. 1624.) The Court found no such conflict, and refused to "read a right to class actions into the NLRA" and rejected any NLRA exception to the FAA. (*Id.* at p. 1619.) So, in each of the three

8

consolidated cases, the Supreme Court upheld collective action waivers and compelled individualized arbitration. (*Id.* at p. 1632.)

Nine months later came *Correia*.

In *Correia*, *supra*, 32 Cal.App.5th 602, the trial court granted an employer's petition to compel arbitration on all causes of action except the PAGA claims. The employer appealed, contending in part that "*Iskanian* is no longer binding as it is inconsistent with . . . *Epic Systems*." (*Id.* at p. 608.) In a comprehensive, well-reasoned opinion authored by Justice Haller, the Fourth District Court of Appeal rejected the argument and affirmed, holding that the purported waiver of PAGA representative claims was unenforceable under *Iskanian*—an opinion with which we agree.

As pertinent here, Justice Haller began with a lengthy description of *Epic Systems*, where an accountant sued his employer for violations of the federal Fair Labor Standards Act (FLSA) and California overtime law, seeking to litigate the FLSA claim on behalf of a nationwide class under FLSA's collective action procedures (29 U.S.C. § 216(b)), and to pursue the state law claim as a class action. (*Epic Systems*, *supra*, 138 S.Ct. at p. 1620.) Justice Haller went on to explain, in her detailed fashion, with numerous citations to *Epic Systems*, what ensued: "The *Epic* employer moved to compel arbitration under a provision in the parties' arbitration agreement requiring individualized arbitration. [Citation.] The Ninth Circuit held this provision was unenforceable because it violates the NLRA by barring employees from engaging in ' "concerted activit[y]." ' [Citation.] In *Epic*, the United States Supreme Court disagreed. The court reconfirmed *Concepcion*'s[2] holding that the FAA requires enforcement of class action waivers, and—as did the *Iskanian* court—determined the NLRA does not take precedence over the

---

[2] [*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333.]

9

FAA on this issue. [Citation.] Although most of the *Epic* opinion concerned an analysis of the NLRA as it relates to the FAA, the court also strongly reiterated the settled principles regarding the breadth of FAA preemption, and made clear that the FAA requires courts ' "rigorously" to "enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted." ' [Citation.] The court observed: 'The parties . . . contracted for arbitration. They proceeded to specify the rules that would govern their arbitrations, indicating their intention to use individualized *rather than class or collective action procedures. And this much the [FAA] seems to protect pretty absolutely*." (*Epic*, at p. ___ [138 S.Ct. at p. 1621], italics added), citing *Concepcion*, *supra*, 563 U.S. 333; [*Am. Express Co. v.*] *Italian Colors* [*Rest.* (2013)] 570 U.S. 228; and *DIRECTV, Inc. v. Imburgia* (2015) 577 U.S. ___ [193 L.Ed.2d 365, 136 S. Ct. 463], each of which involved disputes between private parties." (*Correia, supra*, 32 Cal.App.5th at pp. 618–619.)

Following this exposition of *Epic Systems*, Justice Haller turned to her "Analysis," three pages addressing, and rejecting, the identical argument Lyft makes here:

"Relying on *Epic*'s reiteration of the FAA's broad preemptive scope barring state laws interfering with arbitration provisions requiring individual arbitrations, [appellant] urges us to disavow *Iskanian*'s continuing validity on PAGA claims. We decline to do so.

"On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; see *Tanguilig*,

10

*supra*, 5 Cal.App.5th at p. 673; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 507.)

"*Iskanian* held that a ban on bringing PAGA actions in any forum violates public policy and that this rule is not preempted by the FAA because the claim is a governmental claim. (*Iskanian*, *supra*, 59 Cal.4th at pp. 384–389.) *Epic* did not consider this issue and thus did not decide the *same* question differently. (See *Whitworth v. SolarCity Corp.* (N.D. Cal. 2018) 336 F.Supp.3d 1119, 1122–1123 [*Epic* is not irreconcilable with *Sakkab* [*v. Luxottica Retail N. Am., Inc.* (2015) 803 F.3d 425]].) *Epic* addressed a different issue pertaining to the enforceability of an individualized arbitration requirement against challenges that such enforcement violated the NLRA. (*Epic*, *supra*, 584 U.S. at p. ___ [138 S.Ct. at pp. 1619, 1623–1630].)

"Moreover, the cause of action at issue in *Epic* differs fundamentally from a PAGA claim. *Epic* held that an employee who agrees to individualized arbitration cannot avoid this agreement by asserting claims *on behalf of other employees* under the FLSA or federal class action procedures. (*Epic*, *supra*, 584 U.S. at p. ___ [138 S.Ct. at pp. 1619–1632].) The *Iskanian* court distinguished this type of factual scenario from the PAGA context. Forecasting *Epic*'s outcome, the *Iskanian* court said: 'Our opinion today would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D. This pursuit of victim-specific relief by a party to an arbitration agreement on behalf of other parties to an arbitration agreement would be tantamount to a private class action, whatever the designation given by the Legislature. Under *Concepcion*, such an action could not be maintained in the face of a class waiver.' (*Iskanian*, *supra*, 59 Cal.4th at pp. 387–388.) The

11

*Iskanian* court found the PAGA claim was outside this rule because the employee had been deputized by the state to bring the qui tam claim on *behalf of the state, not on behalf of other employees.* (*Iskanian*, at pp. 384–389.) Although on somewhat different grounds, the *Sakkab* court also found a refusal to enforce a total ban on the PAGA claim was not preempted by the FAA. (*Sakkab*, *supra*, 803 F.3d at pp. 431–440.)

"*Epic*'s interpretation of the FAA's preemptive scope does not defeat *Iskanian*'s holding or reasoning for purposes of an intermediate appellate court applying the law. The *Iskanian* court reached a different conclusion from *Concepcion* on the enforceability of the contractual waiver—not because the *Iskanian* court interpreted the FAA differently from *Concepcion* on the preemption issue, but based on the unique nature of a PAGA claim as a qui tam type action, and the 'PAGA litigant's status as "the proxy or agent" of the state' and his or her 'substantive role in enforcing our labor laws *on behalf of* state law enforcement agencies.' (*Iskanian*, *supra*, 59 Cal.4th at p. 388, italics added.)

"Because the California Supreme Court found a PAGA claim involved a dispute not governed by the FAA, and the waiver would have precluded the PAGA action in *any* forum, it held its PAGA-waiver-unenforceability determination was not preempted. *Epic* did not reach the issue regarding whether a governmental claim of this nature is governed by the FAA, or consider the implications of a complete ban on a state law enforcement action. Because *Epic* did not overrule *Iskanian*'s holding, we remain bound by the California Supreme Court's decision. (See *Auto Equity*, *supra*, 57 Cal.2d at p. 455." (*Correia*, *supra*, 32 Cal.App.5th at pp. 619–620.)

In sum, *Epic Systems* addressed the question whether the NLRA renders unenforceable arbitration agreements containing class action waivers

that interfere with workers' right to engage in "concerted activities." (*Epic Systems*, *supra*, 138 S.Ct. at pp. 1624–1628.) It did not address private attorney general laws like PAGA or qui tam suits.

Arguing that we should reject *Correia*, Lyft refers to it in varying disparaging terms, including that it was "mistaken about the basic facts of *Epic Systems*," and also "mistaken" because it failed to discuss the "logic" of *Epic Systems*, a position apparently based on Lyft's assertion that we are bound to "follow not only the specific holdings of the [United States Supreme Court], but also the 'logic' and 'principle[s]' underlying the analysis." Lyft also describes *Correia* as a "stray" decision.

Such disparagement aside, Lyft acknowledges "that some Courts of Appeal have reached a different result" than that Lyft seeks, and, elaborating on those Courts of Appeal, says this: "They have required the conflict between federal and state Supreme Court decisions to be *exact*. They have held that 'intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently.' (*Correia* (2019) 32 Cal.App.5th 602, 619; accord e.g., *Truly Nolen*, *supra*, 208 Cal.App.4th at p. 507; *In re Marriage of Shaban* (2001) 88 Cal.App.4th 398, 409.)"

Lyft then goes on to discuss *Correia*, after which it cites three other cases as "see also," the first of which is *Subcontracting Concepts (CT), LLC v. De Melo* (2019) 34 Cal.App.5th 201, 213, which Lyft describes as "noting that *Iskanian* held an employee's right to bring a PAGA action was unwaivable." What Lyft does not point out is that *De Melo* is a case from this very court, where we said exactly that—in 2019, after *Epic Systems*.

Since the briefing here was completed, two other opinions from the Fourth District were filed following *Correia*: *Collie v. The Icee Co.* (2020)

13

52 Cal.App.5th 477, 480 ["We also join *Correia . . .* in holding that *Epic Systems . . .* does not undermine the reasoning of *Iskanian*"]; and *Provost v. YourMechanic* (Oct. 15, 2020, No. 37-2017-00024056) ___ Cal.App.5th ___ [2020 Cal.App. LEXIS 955].

We join those cases and add a published opinion from the First District.

Likewise supporting the conclusion are numerous federal court decisions that hold *Iskanian* remains sound after *Epic Systems*, decisions that are best understood by reference to a Ninth Circuit case decided a year after *Iskanian* that expressly endorsed its reasoning. That case is *Sakkab v. Luxottica Retail N. Am.*, *supra*, 803 F.3d 425, which concluded as follows: "After closely examining *Concepcion* and the Court's other statements regarding the purposes of the FAA, we conclude that the *Iskanian* rule does not stand as an obstacle to the accomplishment of the FAA's objectives, and is not preempted." (*Id.* at p. 427.) The Ninth Circuit reasoned that *Iskanian* complies with the FAA requirement "that a state contract defense place arbitration agreements on equal footing with non-arbitration agreements," because the "rule bars any waiver of PAGA claims, regardless of whether the waiver appears in an arbitration agreement or a non-arbitration agreement." (*Id.* at p 432.) And the Court further explained, "a PAGA action is a form of qui tam action," and that the " 'FAA was not intended to preclude states from authorizing qui tam actions to enforce state law.' " (*Id.* at pp. 439, 449.)

Since *Epic Systems* was decided, numerous district courts have continued to follow *Sakkab*—and, implicitly, *Iskanian*—no fewer than six of which are cited in Olson's brief.[3] All Lyft can say as to these decisions is that

---

[3] *Whitworth v. SolarCity Corp.* (N.D. Cal. 2018) 336 F.Supp.3d 1119; *Rejuso v. Brookdale Senior Living Cmtys., Inc.* (C.D. Cal. May 22, 2019, No. 17 Civ. 5227) 2019 WL 6735124; *Gonzales v. Emeritus Corp.* (N.D. Cal. 2019) 407 F.Supp.3d 862, 868; *Gilbert Enterprises, Inc. v.*

14

they "make the same mistake as Olson: they ignore that *Epic Systems* applied the FAA to a government enforcement *action* in *Murphy Oil*."

This reference by Lyft is to *Murphy Oil USA, Inc. v. N.L.R.B.* (5th Cir. 2015) 808 F.3d 1013 (*Murphy Oil*), one of the three cases consolidated in *Epic Systems*. *Murphy Oil* concerned an ongoing challenge to a NLRB decision involving the enforceability of collective action waivers under section 7 of the NLRA, and the NLRB ruled that representative action waivers were unenforceable. The Fifth Circuit overruled the decision, and the United States Supreme Court affirmed. From this, Lyft concludes that *Epic Systems* overrules *Iskanian* because *Murphy Oil* involved "government enforcement proceedings," arguing as follows: "[T]he FAA requires the enforcement of a representative-action waiver even where the statutory rights at issue are the enforcement rights of a government agency or its proxy." Lyft's position finds no support in either the text of *Epic Systems* or the claimed "logic" of its reasoning: *Murphy Oil* did not involve the "enforcement rights" of the NLRB; and there was no challenge to the NLRB's inherent authority to interpret the NLRA.

Nor is it correct to characterize *Murphy Oil* as a "government enforcement action." According to Lyft, because the case involved (1) a government agency and (2) a collective action waiver, it follows that the FAA preempts the type of government claims in a PAGA action. Such facile reading does not withstand scrutiny. As explained above, *Iskanian* noted that PAGA claims involve fundamentally *public* claims. (*Iskanian*, *supra*, 59 Cal.4th at pp. 384–385.) In *Murphy Oil*, the NLRB was not pursuing

---

*Amazon.com* (C.D. Cal. 2019, No. 19 Civ. 2453) 2019 WL 6481697; *Echevarria v. Aerotek, Inc.* (N.D. Cal. 2019, No. 16 Civ. 04041) 814 Fed.Appx. 321; and *Delisle v. Speedy Cash* (S.D. Cal. 2019, No. 18 Civ. 2042) 818 Fed.Appx. 608.

15

public claims, but defending against a customary challenge to the Board's interpretation of section 7 of the NLRA.

This distinction is demonstrated by the recent case of *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175 (*ZB*), an employee's claim for unpaid wages. The trial court granted the employer's petition to compel arbitration, and ordered that the claim be arbitrated as a representative action under PAGA. The Court of Appeal granted the employer's petition for writ of mandate. And the Supreme Court affirmed and remanded, holding that an amount of underpaid wages sought under Labor Code section 558 is not included within the civil penalties recoverable by employees because it is in the nature of compensatory relief and not a civil penalty. Because Labor Code section 558 has no private right of action and a PAGA claim is not available to recover unpaid wages, the employee lacked a cause of action that could be compelled to arbitration. In other words, *ZB* held that PAGA did not authorize the recovery of "victim-specific" relief in the form of wages because PAGA claims are the state's, not those of the aggrieved employees. In the words of the Supreme Court, "*Iskanian* established an important principle: employers cannot compel employees to waive their right to enforce the state's interests when the PAGA has empowered employees to do so. But for *Iskanian* to apply, the state must in fact have delegated enforcement of its interests to private citizens." (*ZB, supra*, 8 Cal.5th at p. 197.)

Finally, we note that one of the cases cited in *Correia* and by Judge Karnow was *Tanguilig v. Bloomingdale's, Inc*, *supra*, 5 Cal.App.5th 665. There, our colleagues in Division Five expressly rejected the argument that intervening United States Supreme Court decisions undermined *Iskanian* where the decisions addressed "a narrow issue" that was "not pertinent" and

"dealt only with arbitration of private damage claims, and not enforcement of civil penalties on behalf of the state." (*Id*. at p. 675.)

Lyft's last argument—one to which we need not respond—is that "the FAA preempts the *Iskanian* PAGA rule even absent intervening precedent." This is followed by four pages contending that even if we reject Lyft's fundamental position, Lyft "summarize[es] why the FAA nonetheless preempts it, to preserve the point for Supreme Court review." Lyft then cites seven bullet-point items, and concludes with this: "For any or all of these reasons, a court empowered to consider the viability of the *Iskanian* PAGA Rule should reject it as preempted by the FAA."

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. Olson shall recover his costs on appeal.

_____

Richman, Acting P.J.

We concur:

_____

Stewart, J.

_____

Miller, J.

*Olson v. Lyft* (A156322)

| Trial Court: | San Francisco County Superior Court |
|---|---|
| Trial Judges: | Honorable Curtis E.A.Karnow<br>Honorable Mary E. Weiss<br>Honorable Garrett L. Wong |
| Attorney for Plaintiff and Respondent Brandon Olson: | Olivier Schreiber & Chao LLP, Monique Olivier, Christian Schreiber; Outten & Golden LLP, Jahan Sagafi, Adam Koshkin, Rachel Bien |
| Attorney for Defendant and Appellant Lyft, Inc.: | Horvitz & Levy LLP, Andrea Russi, Peder Batalden, Felix Shafir; Keker, Van Nest & Peters LLP, R. James Slaughter, Erin E. Meyer, Chessie Thacher, Ian Kanig. |