Filed 6/1/21  Seifu v. Lyft CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MILLION SEIFU, | B301774 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC712959) |
| v. | |
| LYFT, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Horvitz & Levy, Andrea L. Russi, Peder Batalden, Felix Shafir; Keker, Van Nest & Peters, R. James Slaughter, Jo W. Golub, Erin E. Meyer and Morgan E. Sharma for Defendant and Appellant.

Lichten & Liss-Riordan, Shannon Liss-Riordan for Plaintiff and Respondent.

Plaintiff Million Seifu worked as a driver for Lyft, Inc. In 2018, he filed suit against Lyft under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1] He alleged that Lyft misclassified him and other drivers as independent contractors rather than employees, thereby violating multiple provisions of the Labor Code. Lyft moved to compel arbitration based on the arbitration provision in the "Terms of Service" (TOS) that it required drivers to accept in order to offer rides through Lyft's smartphone application.

The trial court denied the motion, rejecting Lyft's argument that the clause in the arbitration provision waiving Seifu's right to bring a representative PAGA claim was enforceable. Lyft makes the same argument on appeal. We agree with other California courts that have unanimously found such PAGA waivers unenforceable. We therefore affirm.

## FACTUAL AND PROCEDURAL HISTORY

Lyft utilizes a smartphone application (app) that connects drivers with riders seeking transportation services. In order to use the Lyft technology platform and offer rides through the app, drivers must agree to the TOS, which states that it "contains provisions that govern how claims you and Lyft have against each other can be brought. . . . These provisions will, with limited exception, require you to submit claims you have against Lyft to binding and final arbitration on an individual basis, not as a plaintiff or class member in any class, group, representative action, or proceeding." (Capitalization omitted.)

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

2

The arbitration provision in the TOS provided, "You and Lyft mutually agree to waive our respective rights to resolution of disputes in a court of law by a judge or jury and agree to resolve any dispute by arbitration. . . . This agreement to arbitrate ('Arbitration Agreement') is governed by the Federal Arbitration Act and survives after the Agreement terminates or your relationship with Lyft ends. . . . Except as expressly provided ... [¶] . . . all disputes and claims between us . . . shall be exclusively resolved by binding arbitration solely between you and Lyft." (Capitalization omitted.) The agreement further stated, "This Arbitration Agreement is intended to require arbitration of every claim or dispute that can lawfully be arbitrated, except for those claims and disputes which by the terms of this Arbitration Agreement are expressly excluded from the requirement to arbitrate." (Capitalization omitted.)

The arbitration provision also included a "Representative PAGA Waiver" stating, "Notwithstanding any other provision of this Agreement or the Arbitration Agreement, to the fullest extent permitted by law: (1) you and Lyft agree not to bring a representative action on behalf of others under the Private Attorneys General Act of 2004 (PAGA), California Labor Code § 2698 et seq., in any court or in arbitration, and (2) for any claim brought on a private attorney general basis, including under the California PAGA, both you and Lyft agree that any such dispute shall be resolved in arbitration on an individual basis only (i.e., to resolve whether you have personally been aggrieved or subject to any violations of law), and that such an action may not be used to resolve the claims or rights of other individuals in a single or collective proceeding (i.e., to resolve whether other individuals have been aggrieved or subject to any violations of law)."

3

Drivers who did not wish to be bound by the arbitration provision could opt out in the 30-day period following their acceptance of the TOS. Those who did not exercise this option in that time were bound by the arbitration provision.

Lyft updated the TOS periodically, and required drivers to agree to the updated terms in order to continue offering rides through the Lyft platform. Seifu agreed to the updated TOS in July 2017 and April 2018; he did not opt out of the arbitration provision.

Seifu filed a complaint against Lyft in July 2018, alleging a single PAGA claim on behalf of the state of California and other similarly situated individuals who worked as drivers for Lyft in California.[2] He alleged that Lyft willfully misclassified its drivers as independent contractors, resulting in numerous Labor Code violations. He sought civil penalties under PAGA, as well as injunctive relief.

Lyft petitioned to compel arbitration of Seifu's individual PAGA claim and stay proceedings in the trial court pending arbitration. Lyft asserted that the PAGA waiver in Seifu's arbitration agreement was enforceable under the recent United States Supreme Court opinion in *Epic Systems Corp. v. Lewis* (2018) ____U.S.____, 138 S.Ct. 1612 (*Epic*). Lyft acknowledged the prior holding in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*) that PAGA waivers were unenforceable, but argued that *Iskanian* was effectively

---

[2] Seifu later amended his complaint to add three other drivers as named plaintiffs, as well as additional claims. This appeal concerns only Seifu's PAGA claim, the thirteenth cause of action in the operative Third Amended Complaint.

4

overruled by *Epic*.[3]

Seifu opposed the petition to compel arbitration. He argued that *Iskanian* remained good law and therefore the PAGA waiver was unenforceable.

The court denied the petition to compel arbitration, finding that the PAGA waiver was unenforceable under *Iskanian*. Lyft timely appealed.

## DISCUSSION

### I.    Standard of Review

Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," we review that decision de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

### II.    Enforceability of PAGA Waiver

Lyft argues that *Epic, supra*, 138 S.Ct. 1612 abrogated "the *Iskanian* PAGA Rule prohibiting the enforcement of a representative-action waiver," and therefore the trial court erred in refusing to enforce the waiver in Seifu's arbitration agreement. We are not persuaded.

In *Iskanian, supra*, 59 Cal.4th 348, our Supreme Court held "that an employee's right to bring a PAGA action is unwaivable," and that "where . . . an employment agreement compels the

_____

[3] Lyft also argued that if the court found the PAGA waiver unenforceable, it should nevertheless compel Seifu's claim for "underpaid wages" under section 558 to arbitration, as that claim sought damages rather than penalties under PAGA. This issue was mooted when the California Supreme Court issued *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 198, holding that a plaintiff cannot seek "underpaid wages" under section 558 through a PAGA claim.

5

waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." (*Id*. at pp. 383-384.) The *Iskanian* court noted that the Legislature enacted PAGA to enhance the state's enforcement of labor laws by "allow[ing] aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies [are] to retain primacy over private enforcement efforts." (*Id*. at p. 379.) Thus, the governmental entity "is always the real party in interest" and a "PAGA representative action is therefore a type of qui tam action." (*Id*. at p. 382.) As such, a PAGA action to recover civil penalties is "'fundamentally a law enforcement action designed to protect the public and not to benefit private parties.'" (*Id*. at p. 387.)

 *Epic, supra*, 138 S.Ct. 1612 "was one of three cases consolidated by the United States Supreme Court that raised the issue of the FAA's preemptive effect over private employment arbitration agreements prohibiting class and collective actions. The Court considered whether the FAA was in conflict with other federal laws, including section 7 of the National Labor Relations Act (NLRA), which guarantees workers the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." (*Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 868 (*Olson*), discussing *Epic, supra*, 138 S.Ct. at p. 1624.) "The Court found no such conflict, and refused to 'read a right to class actions into the NLRA' and rejected any NLRA exception to the FAA. ([*Epic, supra*, 138 S.Ct.] at p. 1619.) So, in each of the three

consolidated cases, the Supreme Court upheld collective action waivers and compelled individualized arbitration." (*Olson, supra*, 56 Cal.App.5th at p. 869, citing *Epic, supra*, 138 S.Ct. at p. 1632.)

Numerous Courts of Appeal have rejected the contention that *Iskanian* is no longer good law in the wake of *Epic*. (See, e.g., *Contreras v. Superior Court of Los Angeles County* (2021) 61 Cal.App.5th 461, 470-471; *Olson, supra,* 56 Cal.App.5th at pp. 872-873; *Provost v. YourMechanic* (2020), 55 Cal.App.5th 982, 997-998; *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477, 480; *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 620 (*Correia*).) "On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the same question differently." (*Correia, supra,* 32 Cal.App.5th at p. 619, citing *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In *Correia*, Division One of the Fourth Appellate District explained: "*Iskanian* held that a ban on bringing PAGA actions in any forum violates public policy and that this rule is not preempted by the FAA because the claim is a governmental claim. [Citation.] *Epic* did not consider this issue and thus did not decide the *same* question differently. [Citation.] *Epic* addressed a different issue pertaining to the enforceability of an individualized arbitration requirement against challenges that such enforcement violated the [National Labor Relations Act]." (*Correia, supra*, 32 Cal.App.5th p. 619, italics in original.) Thus, "[b]ecause *Epic* did not overrule *Iskanian*'s holding, we remain bound by the California Supreme Court's decision." (*Id.* at p. 620.)

Agreeing with this conclusion, *Olson, supra,* 56 Cal.App.5th 862, rejected the same arguments Lyft raised here. Notably, Lyft argued, as it does here, that *Epic* "eroded *Iskanian's* private-public distinction," based on Lyft's characterization of *Murphy Oil*[4] as a "government enforcement action." The court in *Olson* concluded that Lyft's "position finds no support in either the text of *Epic . . .* or the claimed 'logic' of its reasoning: *Murphy Oil* did not involve the 'enforcement rights' of the NLRB," nor was the NLRB pursuing public claims. (*Olson, supra,* 56 Cal.App.5th at p. 873.) By contrast, "*Iskanian* noted that PAGA claims involve fundamentally public claims." (*Id.* at p. 873, citing *Iskanian, supra,* 59 Cal.4th at pp. 384–385; see also *ZB, N.A. v. Superior Court, supra,* 8 Cal.5th at p. 198 ["*Iskanian* established an important principle: employers cannot compel employees to waive their right to enforce the state's interests when the PAGA has empowered employees to do so."].)

In sum, we agree with the reasoning stated in *Olson, Correia,* and the other authorities cited above, and conclude that Lyft's argument regarding the PAGA waiver's enforceability is without merit.[5] We also join *Olson* in declining to reach Lyft's final argument that "the FAA should preempt the *Iskanian* PAGA rule even absent intervening precedent." (See *Olson, supra,* 56 Cal.App.5th at p. 874.) Lyft raises this argument in summary fashion, purporting to "preserve the point for Supreme

---

[4]*Murphy Oil USA, Inc. v. N.L.R.B.* (5th Cir. 2015) 808 F.3d 1013 (*Murphy Oil*), was one of the three cases consolidated in *Epic.* (See *Epic, supra,* 138 S.Ct. at p. 1620.)

[5]We need not reach Seifu's alternative argument that Lyft drivers are exempt from coverage under the FAA pursuant to the transportation worker exemption. (9 U.S.C. § 1.)

Court review."

## DISPOSITION

The order denying the motion compel arbitration is affirmed.  Seifu shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


WILLHITE, ACTING P.J.


CURREY, J.