Filed 2/28/24  Sanchez v. MC Painting CA4/1
Opinion following transfer from Supreme Court
OPINION AFTER TRANSFER FROM THE CALIFORNIA SUPREME COURT

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LAURO SANCHEZ, | D078817 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00030754-CU-OE-CTL) |
| MC PAINTING, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Order reversed in part with directions.

Finch, Thornton & Baird, Chad T. Wishchuk and Marlene C. Nowlin for Defendant and Appellant.

Moon Law Group, Kane Moon, Allen Feghali, Enzo Nabiev and Hyunjin Kim for Plaintiff and Respondent.

MC Painting appeals from an order denying its petition/motion to compel arbitration of a Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.) action brought by a former employee, Lauro Sanchez. In denying the petition, the trial court followed then-controlling precedent in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348 (*Iskanian*), which held that a worker's right to pursue a representative PAGA action cannot be waived and that this state law rule is not preempted by the Federal Arbitration Act (FAA). In our original unpublished opinion filed on April 22, 2022, we affirmed the trial court's order based on *Iskanian*.

Since then, several things have happened. First, on June 15, 2022, the United States Supreme Court decided *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 (*Viking River*), holding that certain aspects of *Iskanian* were preempted by the FAA. Two months later, the California Supreme Court granted review of our opinion pending its decision in *Adolph v. Uber Technologies, Inc.*[1] That decision was filed on July 17, 2023. (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104 (*Adolph*).) Then, on September 13, 2023, this case was transferred to us with directions to vacate our original opinion and reconsider the matter in light of *Adolph*. We have since received and considered supplemental briefs from both parties.

At least for California courts, the three primary lessons to be distilled from *Viking River* and *Adolph* are: (1) the FAA does *not* preempt *Iskanian*'s "principal rule" that prohibits waivers of representative standing[2] to bring

---

[1] (*Adoph v. Uber Technologies, Inc.* (Apr. 11, 2022, G059860 & G060198) [nonpub. opn.], review granted July 20, 2022, S274671.)

[2] In *Viking River,* the United States Supreme Court observed that the term " 'representative' " is used in conjunction with PAGA claims "in two distinct ways." (596 U.S. at p. 648.) First, PAGA claims are always representative in the sense that they are enforcement actions brought by

PAGA claims (*Viking River, supra,* 596 U.S. at p. 649; see *DeMarinis v. Heritage Bank of Commerce* (2023) 98 Cal.App.5th 776, 784 (*DeMarinis*)); (2) the FAA *does* preempt *Iskanian*'s secondary rule that prohibited parties from contracting around PAGA's claim joinder device by splitting arbitrable individual claims from nonarbitrable nonindividual claims (*Viking River, supra,* at p. 659; see *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 129 (*Nickson*)); and (3) subject to any separate limitations on severability, trial courts should generally compel arbitration of individual PAGA claims while preserving the plaintiff's ability to litigate nonindividual claims in court (*Adolph, supra,* 14 Cal.5th at p. 1123; see *Nickson,* at pp. 134–135; *DeMarinis,* at p. 787).

Consistent with these precepts, we reject Sanchez's contention that the severability clause in the arbitration agreement precludes arbitration of Sanchez's individual claims. We therefore reverse the trial court's order to the extent it denied MC Painting's petition to compel arbitration of Sanchez's individual claims with directions to enter a new order granting the motion in part. As to Sanchez's nonindividual claims, the court should consider MC Painting's request that litigation be stayed pending completion of the arbitration.

---

employees as agents or proxies of the state. But in a second sense, some PAGA claims are representative in that they are based on code violations suffered by employees other than the plaintiff. This latter sense distinguishes between the named plaintiff's individual claims and the nonindividual claims of other employees that are part of the plaintiff's action. (*Id.* at pp. 648–649.) We endeavor to consistently use the terms "individual" and "nonindividual" when referring to the second sense.

## FACTUAL AND PROCEDURAL BACKGROUND

MC Painting is in the business of painting, concrete restoration, stucco patching, and related services. In February 2018, it hired Sanchez, who signed a Spanish language arbitration agreement. In English, it states in relevant part:

> "In connection with any dispute, claim, or controversy ('Claim(s)') arising out of or in any way related to the employment, . . . whether based in contract, tort, or statutory duty or prohibition, the Parties agree to submit the Claim(s) to binding arbitration . . . . [¶] . . . [¶] All issues and questions concerning the construction, validity, enforcement, and interpretation of this Agreement shall be governed by, and construed in accordance with, the Federal Arbitration Act . . . . Employee agrees Employee is waiving the right to bring . . . a class action, representative action, or collective action, whether filed in a court of law or in arbitration, against Company . . . . The Parties agree that any arbitration will proceed on an individual basis. . . . [¶] . . . If any provision of this Agreement is deemed unenforceable, the remainder shall continue in full force and effect and only the unenforceable provision may be severed, to the fullest extent permitted under the law."

In 2020, Sanchez filed a putative class action complaint against MC Painting alleging various wage and hour claims. Later, Sanchez voluntarily dismissed his claims without prejudice, with the exception of a representative PAGA cause of action.[3]

---

[3] Sanchez's request for dismissal is not in the record on appeal; however, the parties' briefs agree that Sanchez's only remaining claim is a representative PAGA action in the first sense of the term. (*Ante,* at fn. 2; see *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 586, fn. 5 [order sustaining demurrer not in record, but established by the parties' briefs].) Moreover, the order denying the motion to compel arbitration is consistent with the briefs, stating that "the class and individual allegations

MC Painting petitioned to compel arbitration. Citing *Iskanian*, Sanchez opposed the motion stating, "the California Supreme Court has been abundantly clear that representative PAGA claims are not subject to arbitration." After an unreported hearing, the trial court denied the motion, stating, "*Iskanian* remains good law" and "several appellate courts" have held that a "PAGA plaintiff may not be required to arbitrate" without the state's consent.

## DISCUSSION

### A. Viking River *Partially Alters the PAGA Landscape as Painted by* Iskanian

PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian, supra*, 59 Cal.4th at p. 360.) "The civil penalties recovered on behalf of the state under the PAGA are distinct from the statutory damages to which employees may be entitled in their individual capacities." (*Iskanian*, at p. 381.) A PAGA action is, therefore, " ' "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." ' " (*Iskanian*, at p. 387.)

*Iskanian* held that "an arbitration agreement requiring an employee as a condition of employment to give up the right to bring representative PAGA actions in any forum is contrary to public policy." (*Iskanian, supra*, 59 Cal.4th at p. 360.) This is true regardless of whether the waiver is construed broadly—as waiving the right to act as an agent of the state for purposes of PAGA enforcement—or more narrowly—as only waiving the right to pursue

_____

have been dismissed from the [first amended complaint], leaving only the representative PAGA claim."

nonindividual claims. Similarly, an arbitration agreement between the employee and employer provides no basis to arbitrate nonindividual PAGA claims "because the state is the owner of the claim and the real party in interest, and the state was not a party to the arbitration agreement." (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 621–622.) As *Viking River* confirms and the parties do not dispute, these aspects of *Iskanian* are not preempted by the FAA and remain good law. (*Viking River, supra,* 596 U.S. at 656–659.)

What *Viking River* did change is the portion of *Iskanian* that prohibited splitting a PAGA action into an individual claim (which was subject to arbitration) and a nonindividual claim (which could not be arbitrated). (See *Nickson, supra,* 90 Cal.App.5th at p. 128 ["*Iskanian* rejected the employer's argument that the particular waiver it drafted should be upheld because it only waived nonindividual PAGA claims and preserved the employee's right to arbitrate individual ones"].) The trial court here relied on this aspect of *Iskanian* when it denied MC Painting's arbitration demand *in its entirety*. But in a post-*Viking River* world, where a PAGA action can be split to facilitate arbitration, typically the plaintiff's individual PAGA claim would be subject to arbitration while the nonindividual claims would not.

**B.** ***The Severability Clause Does Not Preclude Arbitration of Sanchez's Individual PAGA Claim***

As *Viking River* emphasizes, arbitration under the FAA is fundamentally a matter of the parties' choice. (*Viking River, supra,* 596 U.S. at p. 651 [that arbitration is a matter of consent is the " 'first principle' " of FAA jurisprudence].) Acknowledging *Viking River*'s holding that the FAA preempts *Iskanian* to the extent that it prevents the parties from agreeing they will arbitrate individual PAGA claims, Sanchez nonetheless contends the trial court acted properly in denying the motion to compel arbitration in

6

total.  He argues that the severability clause in the arbitration agreement reflects the parties' choice to broadly sever unenforceable provisions, which in his view includes the agreement to arbitrate both individual and nonindividual claims.

The arbitration agreement in *Viking River* "contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Viking River, supra,* 596 U.S. at p. 647.)  The severability clause in this case provides:  "If any provision of this Agreement is deemed unenforceable, the remainder shall continue in full force and effect and only the unenforceable provision may be severed, to the fullest extent permitted under the law."

We find no significant difference between the two clauses.  Both provide that if a provision of the arbitration agreement is deemed unenforceable, the remainder will be enforced.  Sanchez suggests that the last phrase in his agreement—"to the fullest extent permitted under law"—refers to the act of severing the unenforceable clause such that it mandates broader severance and, consequently, broader unenforceability.  But this proposed reading ignores the import of the entire preceding phrase in the sentence—"the remainder shall continue in full force and effect and *only* the unenforceable provision may be severed . . . ."  (Italics added.)  This reflects a clear intent that severance, and thus unenforceability, shall be limited such that the arbitration agreement can be *enforced* "to the fullest extent permitted under law."

Following *Viking River*, the law permits the arbitration agreement to be enforced to the extent it requires arbitration of Sanchez's individual PAGA

7

claims. Fairly interpreted, this agreement contains such a requirement. The parties expressly stated "that any arbitration will proceed on an individual basis." (Cf. *Nickson, supra,* 90 Cal.App.5th at p. 130 [plaintiff's individual PAGA claims were arbitrable where the agreement stated that all claims could only be brought " 'on an individual basis' "].) By virtue of the severability clause, the agreement allows for the arbitration of Sanchez's individual PAGA claim notwithstanding that his nonindividual claims can neither be waived nor arbitrated.

Thus, with the benefit of hindsight, the trial court erred in denying MC Painting's petition to compel arbitration in its entirety. It should have granted the motion in part only with respect to Sanchez's individual claims.

## C.  *The Trial Court Did Not Abuse Its Discretion In Considering Sanchez's Late Opposition Papers*

Where, as here, a lawsuit is already pending, a defendant may file a petition to compel arbitration in lieu of filing an answer to a complaint. (Code Civ. Proc., § 1281.7.) MC Painting did so here on December 23, 2020, with a proof of service by mail to an address in California filed the same date. The hearing was scheduled for April 2, 2021. Absent an extension of time, Sanchez's response was due 15 days after service—that is, January 7, 2021. (*Id.,* §§ 1290.6, 1013.) But he did not file opposition until March 15, 2021.

Where no timely opposition is filed, the allegations of a petition to compel arbitration are deemed admitted. (*Taheri Law Group, A.P.C. v. Sorokurs* (2009) 176 Cal.App.4th 956, 962 (*Taheri*).) MC Painting invoked that rule, but the trial court allowed the late filing, stating:

8

"[E]ven if [Code of Civil Procedure] section 1290.6 applies, the statute specifically allows the court to extend the time for filing an opposition for good cause. [MC Painting] has failed to show that the court has no good cause to consider the late opposition brief or that it has suffered undue prejudice by the tardy filing. To the contrary, it appears that [MC Painting] was able to timely file and serve an 11-page reply on the merits."

In a two-paragraph argument at the end of its opening brief, MC Painting contends that the order should be reversed because Sanchez filed an untimely response. But as the trial court correctly noted, Code of Civil Procedure section 1290.6 expressly allows an extension of time "for good cause"—and MC Painting makes no argument that the trial court abused its discretion in determining good cause existed here.

In any event, the consequence of an untimely opposition is merely that the *factual* allegations in the petition are deemed admitted. The trial court still must draw legal conclusions from those deemed admitted facts. (*Taheri*, *supra*, 176 Cal.App.4th at p. 962). Here, the petition alleges: (1) MC Painting is a California corporation; (2) in the construction industry; (3) engaged in interstate commerce; (4) Sanchez signed the arbitration agreement; and (5) the allegations in Sanchez's complaint arise out of or relate to his employment. Even assuming these allegations are deemed true, the court was still obligated to reach a *legal conclusion* whether and the extent to which the arbitration agreement was unenforceable. Thus, even assuming for the sake of discussion that the trial court abused its discretion in considering late opposition, any such error was harmless.

9

**D.** *MC Painting's Request to Stay Litigation of the Nonindividual Claims Should Be Made to the Trial Court in the First Instance*

*Viking River* concluded that once a plaintiff's individual PAGA claim was ordered to arbitration, the "the correct course is to dismiss her remaining [nonindividual] claims." (*Viking River, supra,* 596 U.S. at p. 663.) This conclusion was based on the United States Supreme Court's interpretation of California law and a plaintiff's standing to pursue nonindividual PAGA claims. In *Adolph,* the California Supreme Court clarified that *Viking River* had *misread* California law on PAGA standing. Justice Liu's opinion explained that "a plaintiff who files a PAGA action with individual and non-individual claims does not lose standing to litigate the non-individual claims in court simply because the individual claims have been ordered to arbitration." (*Adolph, supra,* 14 Cal.5th at p. 1128.) Accordingly, granting a motion to compel arbitration of a plaintiff's individual PAGA claim provides no basis to dismiss any remaining nonindividual claims.[4] Typically, courts that order arbitration of individual claims will stay the nonindividual claims pending the arbitration. (See, e.g., *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 806 (*Gregg*).)

Here, as in *Gregg,* the arbitration agreement itself suggests that litigation of the nonindividual claims should be stayed pending completion of the arbitration. (*Gregg, supra,* 89 Cal.App.5th at p. 806.) The agreement provides that "[t]o the extent any portion of the Claim(s) cannot be arbitrated under applicable law [('Excluded Claims')], the Parties agree to bifurcate and stay for the duration of the arbitration proceedings any such Excluded

---

[4]     As to the interpretation of California law, we are bound by the pronouncements of the California Supreme Court notwithstanding any contrary views expressed by the United States Supreme Court. (See *Adolph, supra,* 14 Cal.5th at p. 1119.)

10

Claims." Still, "the trial court has not had the opportunity to rule on [any] stay request, because it denied [the] motion to compel arbitration outright." (*Seifu v. Lyft, Inc.* (2023) 89 Cal.App.5th 1129, 1142.) Once the court enters a new order compelling arbitration of Sanchez's individual claims, it should consider MC Painting's request to stay the remaining nonindividual claims consistent with its overall management of the superior court litigation. (See *Nickson, supra,* 90 Cal.App.5th at p. 135.)

## DISPOSITION

The order is reversed with directions to enter a new order granting in part the petition to compel arbitration to the extent of Sanchez's individual PAGA claim. Following entry of the new order, the court should consider any request to stay litigation of the remaining nonindividual claims. The parties shall each bear their own costs for this appeal.


DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

11